**Vicky MILLER and Jimmy Miller, Surviving Parents of their Minor Child, Timothy Winston Miller, Deceased, Appellants,**

v.

**WAL–MART STORES, INC. and Kenneth Lynch, Appellees.**

No. 07–95–0289–CV.

Court of Appeals of Texas, Amarillo.

March 25, 1996.

Rehearing Overruled April 16, 1996.

Miller & Herring, P.C., Jamie S. Vandivere, Amarillo, for appellants.

Gibson Ochsner & Adkins, L.L.P., Thomas C. Riney and Vance Edward Ivy, Amarillo, for appellees.

Before REYNOLDS, C.J., and DODSON and QUINN, JJ.

REYNOLDS, Chief Justice.

Appealing from a take-nothing judgment, rendered on a jury's verdict, in their action to recover damages from Wal–Mart Stores, Inc. (Wal–Mart) and Kenneth Lynch for negligence in selling .22 caliber long rifle ammunition to their son Timothy Winston Miller (Timmy), appellants Vicky Miller and Jimmy Miller, surviving parents of their minor child, Timmy, deceased (collectively, the Millers), present a four-point attack against the judgment. We will affirm.

The litigation arose from events occurring on 8 April 1992, which culminated in Timmy's death from a .22 caliber bullet while he and his friend, Brian Scott Meier, were target

shooting. As pertinent to the appellate contentions, the evidence revealed that although Brian was a few years older, he and Timmy had been best friends for a number of years. Contrary to Vicky Miller's protestations that she did not know what the boys did when they were together other than roam in the outdoors, Gayle Meier, Brian's mother, testified that she and Vicky had discussed the boys' activities, and Vicky was aware the boys often used Brian's .22 caliber rifles in target shooting. Brian's deposition testimony affirmed that he and Timmy frequently engaged in the sport of target shooting. When questioned, Brian averred that they procured ammunition from several different sources, including Timmy's older sister Kristy Miller, Timmy's father Jimmy Miller, his own father Ray Meier, and purchases the boys themselves made at the Wal–Mart store and other sporting goods stores in Canyon.

Brian reported various accounts of the events of 8 April 1992 at different times to different people. Nevertheless, his deposition testimony, presented to the jury in his absence from the trial,[1] unequivocally revealed that he and Timmy set out to target shoot that day, and that Timmy purchased ammunition from the Wal–Mart store in Canyon for that purpose.

According to Brian, neither of them had any money, but Timmy had an automatic teller machine (ATM) bank debit card. The two went to the Wal–Mart store in Canyon and accessed the Millers' bank account through the ATM in the front of the store and debited $40. They then went to McDonald's and purchased lunches to take with them; but, before eating, they went back to the Wal–Mart store to buy ammunition for target shooting. Brian recalled that it was approximately 12:00 noon when they returned to Wal–Mart.

Brian, who was sixteen, and Timmy, who was fourteen, had on prior occasions been refused the sale of ammunition by other merchants and knew that by law they were not old enough to purchase ammunition. Even so, they went unaccompanied by anyone old enough to purchase ammunition to the sporting goods department of the Wal–Mart store in Canyon. There, so Brian declared, no one asked for any identification to verify their ages, and Timmy purchased from someone, though Brian could not recall even a general description of the gender or race of the salesperson, two bricks of .22 caliber long rifle ammunition.[2]

Once the ammunition was purchased, the boys went to a parcel of land where Brian had obtained permission to hunt whenever he wanted. They ate their lunch, and then each boy took one of the bricks of ammunition and they began to shoot dragon flies and other indigenous items. Brian could not recall with any clarity the details surrounding the accident, but did recall that he heard Timmy say he had been shot. Brian told him to sit down and then tried to help him, but Timmy passed out. Then, Brian tried to carry Timmy to get help; but, realizing he could travel faster without him, left Timmy and ran to a nearby veterinary clinic.

The veterinarian was outside the clinic on his way to discover the source of the shooting. When Brian saw the veterinarian, he exclaimed that his friend had "shot himself." The veterinarian's assistant called for an ambulance. Timmy died as a result of gunshot wounds which, the pathologist testified, were not self-inflicted.

Initially instituting their action on 6 January 1993 against Wal–Mart and Kenneth Lynch, manager of the Wal–Mart store in Canyon, the Millers alleged that the "actual purchase and acquisition of the ammunition was solely performed by [Timmy], as [Brian] stood by and observed," and that Wal–Mart and Lynch were negligent, negligent per se, and grossly negligent in selling fourteen-year-old Timmy ammunition in violation of title 18 of United States Code section 922(b)(1) (1979), which makes it unlawful to sell rifle ammunition to anyone the merchant

---

1. At the time of trial, Brian was on vacation and his parents did not know where he was or how to contact him. Portions of his prior deposition testimony were both read to the jury and viewed via videotape.

2. One brick consists of 500 rounds of ammunition.

knows or has reason to know is under the age of eighteen.[3] Wal–Mart and Lynch filed a general denial, special exceptions regarding the amount of damages requested by the Millers, and affirmative defenses to the recovery of exemplary damages.

Responding to the special exceptions regarding damages, the Millers amended their petition through the sixth amended petition filed 6 April 1995, their live trial pleadings; yet, in each amendment, the Millers continuously alleged that the "actual purchase and acquisition of the ammunition was solely performed by [Timmy], as [Brian] stood by and observed." [4]

Through the discovery process, Wal–Mart admitted, and provided a cash register receipt which evinced, that on 8 April 1992 at 11:00:01 a.m., its Canyon store employee Joe Soto sold two bricks of Remington .22 caliber long rifle ammunition by a transaction in which the purchaser gave Soto $40 and received $19.19 in change. However, Wal–Mart was not requested to, and it did not, admit that it made the sale to Timmy. Moreover, by its fourth amended answer, Wal–Mart alleged that any causal connection between any sale of ammunition and its liability for Timmy's death was destroyed by Timmy's own and the Millers' negligence.

The first day of trial consisted of the presentation of opening arguments, Brian's deposition testimony, and the live testimony of the investigating officer, Bob Henderson. On the second day, the Millers, believing Wal–Mart was attempting to show that Brian rather than Timmy purchased the ammunition, requested permission to amend their petition to allege that the purchase or acquisition of the ammunition was accomplished by either Timmy or Brian. The bases of their belief were Wal–Mart's counsel's opening statement and questions posed in Brian's deposition regarding his size and appearance.

Counsel for Wal–Mart objected that the amendment was a surprise and its allowance would be prejudicial. After hearing counsel's testimony concerning how the amendment would prejudice the case, the trial court denied permission to amend without making stated findings of prejudice or surprise.

Still, the Millers offered the testimony of Jean Warren Weatherly, owner of Twink's Gun Shop, that she believed it to be gross negligence to sell ammunition to either Brian or Timmy. Wal–Mart's objection that her testimony should not be heard by the jury because it did not pertain to any pleaded issue was sustained. The Millers perfected a bill of exception to establish Weatherly's proffered testimony.

When the Millers finished presenting their evidence, Lynch moved for, and was granted, an instructed verdict since no evidence was presented that he had any connection to the sale of the ammunition. The judgment provided that the instructed verdict precluded recovery from Lynch. Because the Millers do not contend that the instructed verdict was erroneous, the judgment exonerating Lynch became final in the trial court. *Shell Petroleum Corp. v. Royal Petroleum Corp.*, 135 Tex. 12, 137 S.W.2d 753, 759 (1940).

In submitting the Millers' cause against Wal–Mart to the jury, the trial court included, over the Millers' objections, the first question in these words:

> Did an employee of Wal–Mart sell ammunition to Timothy Miller on April 8, 1992?
>
> Answer "Yes" or "No."
>
> ANSWER:⎯⎯⎯⎯⎯

**3.** References herein to the federal statute upon which the Millers rely are to that statute which, in material part, provides:
 (b) It shall be unlawful for any licensed importer, licensed manufacturer, licensed dealer, or licensed collector to sell or deliver—
  (1) any firearm or ammunition to any individual who the licensee knows or has reasonable cause to believe is less than eighteen years of age, and, if the firearm, or ammunition is other than a shotgun or rifle, or

ammunition for a shotgun or rifle, to any individual who the licensee knows or has reasonable cause to believe is less than twenty-one years of age.
18 U.S.C.S. § 922(b)(1) (Law. Co-op. 1979).

**4.** The Millers' inclusion, by amended pleadings, of claims under the Texas Deceptive Trade Practices—Consumer Protection Act were stricken, and they are not a subject of the appeal.

If you have answered Question No. 1 "Yes," then answer Question No. 2; otherwise, do not answer any other questions.

The jury answered, "No," and did not answer any other submitted questions. The trial court rendered a take-nothing judgment upon the verdict.

Attacking the judgment with four points of error, the Millers' initial contention is that (1a) the evidence established as a matter of law that an employee of Wal–Mart sold ammunition to Timmy, and (1b) the jury's finding that an employee of Wal–Mart did not sell ammunition to Timmy was against the great weight and preponderance of the evidence. Then, they contend the trial court reversibly erred (2) in denying their motion to allow a trial amendment, (4) in sustaining objections to Weatherly's testimony, and (3) in submitting question number one and the following qualified instruction. We will discuss the contentions of error in logical sequence.

In pursuing their third-point contention that the court reversibly erred in submitting the first question and its qualifying instruction, the Millers argue, consistent with their unsuccessful trial court objections, that the question was duplicitous of the second question, was redundant, and the second question should have been submitted in lieu of the first question. The second question and its preceding instruction were submitted in this language:

> You are instructed that it is negligence for a licensed dealer/retailer to sell or deliver ammunition to any individual, who the licensee knows or has reasonable cause to believe is less than eighteen (18) years of age and, if the ammunition is for other than a shotgun or rifle, to any individual, who the licensee knows or has reasonable cause to believe is less than twenty-one (21) years of age.

5. Parenthetically, we notice that the Millers also submit that the first question deviated from the acceptable form of submission set forth in Section 4.01B of Texas Pattern Jury Charge, and they include, at least tacitly, an argument that the question was a comment upon the weight of

QUESTION NO. 2

■ Did the negligence, if any, of those named below proximately cause the death of TIMOTHY WINSTON MILLER?

Answer "Yes" or "No" for each of the following:
a. Wal–Mart Stores, Inc. _____
b. Timothy Miller _____
c. Jimmy Miller _____
d. Vicky Miller _____

The Millers also assert that this question adequately addressed the issue of negligence as to all parties in the lawsuit, and was required to be given under Texas Rule of Civil Procedure 277 without the duplication of the first question, which inquired whether Wal–Mart alone was negligent.[5] In developing their contention, the Millers cite *Wakefield v. W.M. Bevly*, 704 S.W.2d 339 (Tex. App.—Corpus Christi 1985, no writ), and *Thate v. Texas & P. Ry. Co.*, 595 S.W.2d 591 (Tex.Civ.App.—Dallas 1980, writ dism'd), for the holding that the submission of multiple issues raising the same factual inquiry is erroneous, 704 S.W.2d at 347, and should be discouraged. 595 S.W.2d at 597.

Joining issue, Wal–Mart responds that the questions are not duplicitous because the question whether Wal–Mart sold ammunition to Timmy was a proper element of the Millers' cause of action and was a disputed fact issue; therefore, its submission to the jury was appropriate. And further, even if the questions were duplicitous, the Millers have failed to establish any harm by the duplication since the jury's negative answer to the first question precluded the necessity of answering the second question. Moreover, if the jury found no sale was made by Wal–Mart to Timmy, they would not have found negligence as to Wal–Mart, leaving only questions of the negligence of the Millers and Timmy.

■ The trial court has broad discretion in submitting jury questions so long as the questions submitted fairly place the disputed issues before the jury. *Varme v. Gordon*,

the evidence. Because these matters were not presented to the trial court in the form of objections, any claimed errors in these respects were not preserved for review, *Keetch v. Kroger Co.*, 845 S.W.2d 262, 267 (Tex.1992), and they will not be further noticed.

881 S.W.2d 877, 881 (Tex.App.—Houston [14th Dist.] 1994, writ denied). To determine whether an alleged error in the jury charge is reversible, we must consider the pleadings of the parties, the evidence presented at trial, and the charge in its entirety to determine if the trial court abused its discretion. *Island Rec. Dev. v. Republic of Texas Sav.*, 710 S.W.2d 551, 555 (Tex.1986). Alleged error will be deemed reversible only if, when viewed in the light of the totality of these circumstances, it amounted to such a denial of the rights of the complaining party as was reasonably calculated to and probably did cause the rendition of an improper judgment. *Id.*

■ Questions are duplicitous if they embrace the same fact question, whether identical in language or merely in similar form. *Holmes v. J.C. Penney Company*, 382 S.W.2d 472, 473 (Tex.1964). Given this definition, the two questions are not duplicitous.

The first question asked the jury whether a preponderance of the evidence showed that Wal–Mart sold ammunition to Timmy. The inquiry was the controlling issue raised by the Millers' pleadings and the evidence, and was a proper submission of their valid theory of recovery for Wal–Mart's alleged negligence. *See Exxon Corp. v. Perez*, 842 S.W.2d 629, 631 (Tex.1992). The second question, albeit conditioned on a "Yes" answer to the first question and preceded by the negligence instruction, inquired of an entirely different matter, *i.e.*, whose negligence, if any, caused the death of Timmy.

With regard to the first question, the burden was on the Millers to secure a jury finding that, as the predicate for their cause of action was pleaded, Wal–Mart sold ammunition to Timmy. If they failed to secure the finding, the second question became immaterial. This is a situation where the conditional submission of questions is authorized to serve a useful purpose. *Strauss v. LaMark*, 366 S.W.2d 555, 558 (Tex.1963).

Moreover, even accepting arguendo the Millers' contention that the first question was subsumed by the second one, that alone would not merit a reversal. This obtains because they do not further contend, or even suggest, that the submission of the two questions amounted to such a denial of their rights as was reasonably calculated to, and probably did, cause the rendition of an improper judgment, and we are not of that opinion. *Holmes v. J.C. Penney Company*, 382 S.W.2d at 473; *State Farm Fire and Cas. Co. v. Price*, 845 S.W.2d 427, 435 (Tex. App.—Amarillo 1992, writ dism'd by agr.). The Millers' third point of error is overruled.

■ Initially, in attacking the jury's "No" answer to the first question, the Millers originally contend the evidence established as a matter of law that Wal–Mart sold the ammunition to Timmy, and next contend that the jury's finding that Wal–Mart did not sell ammunition to Timmy is against the great weight and preponderance of the evidence. With respect to the latter contention, the jury's "No" answer was not a finding that Wal–Mart did not sell ammunition to Timmy; rather, it was a failure to find the fact inquired about from a preponderance of the evidence, *C. & R. Transport, Inc. v. Campbell*, 406 S.W.2d 191, 194 (Tex.1966), which need not be supported by affirmative evidence. *Traylor v. Goulding*, 497 S.W.2d 944, 945 (Tex.1973).

■ Nevertheless, since the Millers had the burden of proof on the question, their points of error are the appropriate challenges to the jury's answer. *Raw Hide Oil & Gas v. Maxus Exploration*, 766 S.W.2d 264, 275–76 (Tex.App.—Amarillo 1988, writ denied). Their matter-of-law point is valid only if the evidence establishes conclusively that an employee of Wal–Mart sold ammunition to Timmy. Robert W. Calvert, "No Evidence" and "Insufficient Evidence" Points of Error, 38 Tex.L.Rev. 361, 364 (1960). Otherwise, if there is any evidence of probative force to raise a fact issue on the question, the point must fail. *Collora v. Navarro*, 574 S.W.2d 65, 68 (Tex.1978); *see also, McGalliard v. Kuhlmann*, 722 S.W.2d 694, 697 (Tex.1986).

■ If the matter-of-law point fails, we then reach the Millers' against-the-great-weight-and-preponderance-of-the-evidence point of error. By the presentation of the point, the Millers concede that there is con-

flicting evidence on the question whether an employee of Wal–Mart sold ammunition to Timmy, *Raw Hide Oil & Gas v. Maxus Exploration,* 766 S.W.2d at 275, and the point requires us to weigh all of the evidence to determine if the jury's failure to find the fact inquired about is so against the great weight and preponderance of the evidence as to be manifestly unjust. *Traylor v. Goulding,* 497 S.W.2d at 945.

To support both of their points, the Millers rely upon Brian's deposition testimony as direct evidence that an employee of Wal–Mart illegally sold ammunition to Timmy, who paid for it. Brian's testimony that Timmy secured $40 with an ATM card with which to purchase the ammunition was, they offer, circumstantially evidenced by the removal of $40 from their bank account via an ATM card on the same day; by Wal–Mart's register tape reflecting $40 tendered to employee Joe Soto at 11:00 a.m. that day for two boxes of ammunition, each consisting of 500 rounds; by an investigating officer's testimony that he retrieved from Timmy's body, and returned to Jimmy Miller, an ATM card; by Vicky Miller's testimony that the ATM card had not been utilized by anyone that day except Timmy; and by an absence of evidence that the ammunition was not sold to Timmy. This evidence, the Millers conclude, proved the ammunition was sold to Timmy, and the jury's negative answer to the first question was against the great weight and preponderance of the evidence.

However, there was other evidence for the jury to consider, much of which bore on the credibility of Brian. Although Brian told the veterinarian that Timmy had shot himself, both the forensic pathologist and the investigating officer testified that Timmy's wound was not self-inflicted. Even though Brian testified that the moment before Timmy was shot, he shot directly in front of, and perpendicular to Timmy, and nothing interfered with his aim, a supplemental report by the sheriff's office indicated that a dog had interfered with Brian's aim just prior to the moment before Timmy was shot, and the officer described how Timmy was accidentally shot by Brian. The pathologist testified that Timmy's wound was not caused by a ricocheted

bullet fired by Timmy, and that from the angle of the bullet, the accident could not have occurred as described by Brian.

There was testimony from Vicky Miller that Timmy's sister Kristy, whom Brian testified had previously procured ammunition for the boys, was the last one who had the ATM card before the accident. Brian recounted that neither he nor Timmy had any money, and after Timmy accessed the $40, they purchased lunches, went to Wal–Mart at 12:00 noon, and Timmy purchased the ammunition; yet, the Wal–Mart register tape showed an ammunition sale at 11:00 a.m., for which $40 was tendered, an amount that would not have been available after the lunches were purchased, and that $19.19 was returned in change. No money was found on Timmy's body. Kristy did not testify.

Brian recalled that Timmy asked for two bricks of shells from the person behind Wal–Mart's counter; but he could not give any description of the person or the person's dress. Joe Soto, who admittedly conducted the ammunition sale evinced by the register tape, did not recall ever seeing either Timmy or Brian, could not identify either from photos shown him, but stated that he would not sell ammunition to either of them. When shown a picture of Timmy, Soto said he would not have sold ammunition to Timmy because he was too young by his appearance to legally purchase any type of ammunition. When directly asked, he denied that the sale was made to Timmy. Both Soto and Lynch testified that Soto had no incentive to make an illegal sale to someone like Timmy.

Given that there are circumstances in evidence tending to discredit Brian's testimony of the sale, the only direct evidence of the disputed fact, the Millers did not establish as a matter of law that an employee of Wal–Mart sold ammunition to Timmy. The evidence merely raised a question concerning Brian's credibility, which was for the trier of fact to determine. *McGalliard v. Kuhlmann,* 722 S.W.2d at 697.

There being conflicting evidence on the disputed fact question, it became the province of the jury to judge the credibility of the witnesses and the weight of their testimony in order to arrive at the answer it

deemed the most reasonable. In discharging its function, the jury had the sole right to believe all, some or none of the testimony of the witnesses. *Benoit v. Wilson,* 150 Tex. 273, 239 S.W.2d 792, 796–97 (1951). After reviewing all of the evidence, we cannot say that the jury's "No" answer to the first question is so against the great weight and preponderance of the evidence as to be manifestly unjust. We are not authorized to set aside the jury's verdict merely because the jury might have drawn a different conclusion from the evidence. *Id.* 239 S.W.2d at 797. The Millers' first point of error is overruled.

The Millers' second-point contention is that the trial court erred in not allowing them to amend their pleadings during trial to include an allegation that Wal–Mart sold ammunition to either Brian or Timmy. When they moved for the amendment, Wal–Mart objected, and the court heard the motion. Wal–Mart's counsel testified that the amendment was a surprise and would be prejudicial, giving an explanation how he would have structured his trial strategy differently had a sale to Brian been timely alleged. The Millers responded that the addition would not be prejudicial since no new cause of action was alleged in that the sale of the ammunition to either fourteen-year-old Timmy or sixteen-year-old Brian was negligence per se under the federal statute.

■■■■ A court's decision to allow or deny a trial amendment may be reversed only if it is a clear abuse of discretion. *State Bar of Texas v. Kilpatrick,* 874 S.W.2d 656, 658 (Tex.), *cert. denied,* 512 U.S. ——, 114 S.Ct. 2740, 129 L.Ed.2d 860 (1994). However, a court has no discretion to refuse an amendment unless (1) the opposing party presents evidence of surprise or prejudice, or (2) the amendment asserts a new cause of action or defense and, thus, is prejudicial on its face, and the opposing party objects to the amendment. *Greenhalgh v. Service Lloyds Ins. Co.,* 787 S.W.2d 938, 939 (Tex. 1990). Surprise may be shown as a matter of law if the pleading asserts a new and independent cause of action or defense. *Hardin v. Hardin,* 597 S.W.2d 347, 352 (Tex. 1980).

■■■■ Although the trial court did not state the basis of its denial of the amendment, the court reasonably could have concluded that the amendment would have introduced a new substantive matter to reshape the Millers' theory of recovery to meet Wal–Mart's defense that the ammunition sale was made to someone other than Timmy, which the Millers had learned in pretrial discovery but did not include in any of their amended pleadings before trial; and that under these circumstances, the amendment was, as Wal–Mart evidenced, a surprise and would prejudice the presentation of its defense. *Id.* at 349–50. For us to disturb the court's ruling, the Millers, as the complaining parties, had the burden to show the court clearly abused its discretion in denying their amendment. *Id.* Under this record, they have not done so. Their second point of error is overruled.

■■■■ Our overruling of the Millers' second point pretermits an extended discussion of their fourth point of error, by which they contend the trial court abused its discretion in sustaining Wal–Mart's objection to Weatherly's testimony that it would be grossly negligent for a retailer to sell ammunition to Brian. Absent any support in the live pleadings and evidence—indeed, in avowing the ammunition sale was made to Timmy, Brian denied that he purchased it—the court cannot be faulted for excluding the testimony. The Millers' fourth point of error is overruled.

The judgment is affirmed.