NO. 07-01-0004-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL D

SEPTEMBER 20, 2001

_____

TY ROBBINS, APPELLANT

V.

THOMAS K. PAYNE AND THE DOOR, INC., APPELLEES

_____

FROM THE 99TH DISTRICT COURT OF LUBBOCK COUNTY;

NO. 98-502,439; HONORABLE MACKEY HANCOCK, JUDGE

_____

Before BOYD, C.J., and QUINN and REAVIS, JJ.

This appeal arises from a dispute between the founders of a business who dissolved their relationship less than a year after establishing the business. Both parties filed suit against each other, alleging breach of agreements and other duties arising from their relationship. At the conclusion of a jury trial, the court directed a verdict for appellees

on each of the causes of action, thus prompting this appeal. Finding no error in the judgment below, we affirm.

Proper consideration of the issues raised in this appeal necessitates a brief review of the factual and procedural history of the parties' dispute. In 1996, appellant Robbins was a student at Texas Tech University. He performed computer support and related services for appellee, Thomas K. Payne (Payne). The parties discussed establishing a business to provide internet access services to the public in the Lubbock area. These discussions culminated in a short written agreement signed on October 18, 1996.[1] As described in the agreement, the business name was "the Door," sometimes referred to as "the Door to the Internet."

Shortly after the agreement was signed the business began operating, with Robbins handling the technical aspects and some other daily operational decisions and Payne participating in financial, advertising and other business development activities. The

---

[1] Thomas K. Payne . . . and Timothy Robbins . . . agree as follows:

1) Payne will fund the start-up costs for an internet related business to be called "THE DOOR";

2) Robbins agrees to devote full-time to this business;

3) 100% ownership of the business will be retained by Payne until such time as Payne has achieved "payout" as defined below;

4) Operating profits will be distributed 75% to Payne and 25% to Robbins until Payne achieves payout;

record shows the business was successful in obtaining customers and providing service to those customers. However, even after several months of operation, the business was not producing a profit. Consequently, Robbins did not receive any financial benefit from the business during this time. Disagreements developed between Payne and Robbins about certain aspects of the business and, in the summer of 1997, Robbins explored the possibility of obtaining financing to "buy-out" Payne or establishing another business to compete in the same markets. Robbins ceased participating in the business about August 1, 1997.

_____

5) Operating profits will be offset by any operating losses prior to any profits being distributed;

6) All tax benefits associated with start-up and operations of THE DOOR will accrue 100% to Payne until Payne has achieved payout;

7) "Payout" is defined as the time at which Payne has received cash distributions from this business equal to the sum of Payne's original investment plus any additional cash contributions made by Payne subsequent to start-up and prior to payout, plus 10% simple interest on outstanding balances;

8) This business will occupy office space in a building owned by Payne. Payne will supply one office, a common storage area and office equipment for use by The Door. These services will be charged to The Door at the rate of $600 per month. In the event The Door occupies additional office space in the future such space will be charged to The Door at the rate of $12.00 per square foot. Full service. Payne will retain ownership of all office equipment, unless same is later purchased by The Door;

9) When "payout" is achieved, profits will be distributed 50% to Payne and 50% to Robbins. Furthermore, at payout 50% equity ownership in this business will be vested in Robbins, who will at that time receive 50% of the stock in the corporation;

10) In regard to decisions which must be made in the future, prior to payout all final decisions will be made by Payne.  Subsequent to payout, all final decisions which are financially related will be made by Payne, and all final decisions which are systems related will be made by Robbins.

Appellees Payne and the Door sued Robbins on June 15, 1998, for breach of contract and for a declaration that Robbins did not have an equity interest in The Door. The following day, Robbins filed suit against appellees Payne and the Door, asserting causes of action for breach of partnership agreement, breach of a duty of good faith, breach of agreement to form partnership, promissory estoppel, fraud, negligent misrepresentation, breach of fiduciary duty, and constructive trust.

After the denial of a motion for summary judgment filed by appellees, the case was tried to a jury on two days in October 2000.  After both parties closed, appellees moved for a directed verdict as to each of Robbins's causes of action on the ground that the evidence was legally insufficient to support those claims.  It also sought a directed verdict on appellees' request for a declaration that Robbins did not have an ownership interest in the Door.  The trial court granted the motion, stating that it found the evidence conclusively established an enforceable contract and all prior negotiations merged into that contract. It rendered judgment for appellees, declaring that appellant had no ownership interest in the Door and that he take nothing on his claims.  After filing a motion for new trial, appellant timely perfected appeal and now presents three issues for our review.  They are that the trial court erred in: 1) granting a trial amendment to add a denial of the existence of a partnership, 2) granting an instructed verdict when there was evidence of a

4

meritorious theory of recovery, and 3) granting an instructed verdict when there was some evidence of a meritorious defense.

## Trial Amendment

Robbins's first challenge is to the trial court's decision to permit appellees to file a trial amendment denying the existence of a partnership. During the preliminary proceedings on the day of trial, Robbins pointed to the allegation in his petition alleging a fiduciary relationship between the parties and argued this implied the existence of a partnership. He also argued that appellees had failed to file a verified denial of partnership as required by Rule of Civil Procedure 93. In response, appellees sought leave to amend their answer to add a verified denial of partnership. After considering the request during voir dire, the trial court permitted the amendment finding that the amendment would not operate as a surprise because the issue was raised in the pleadings, even though there was no verified denial. The court offered Robbins the opportunity to present evidence of surprise but, he only sought a continuance, which was denied.

Amendments to pleadings filed less than seven days before the date of trial may only be filed with leave of the trial court. Tex. R. Civ. P. 63. The rule provides that leave shall be granted unless there is a showing the filing will operate as a surprise to the

5

opposite party. *Id. See also* Tex. R. Civ. P. 66 (authorizing trial amendments unless the non-movant shows prejudice). The standard of review applicable to a trial court's decision to permit amendment is whether the court abused its discretion. *Miller v. Wal-Mart Stores, Inc.*, 918 S.W.2d 658, 666 (Tex.App.--Amarillo 1996, writ denied). The test for abuse of discretion is whether the trial court's action was arbitrary and unreasonable or whether the trial court acted without reference to guiding rules or principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241-42 (Tex. 1985), *cert denied*, 476 U.S. 1159, 106 S.Ct. 2279, 90 L.Ed.2d 721 (1986).

At trial, appellees relied on *Kirby Forest Industries, Inc. v. Dobbs*, 743 S.W.2d 348 (Tex.App.–Beaumont 1987, writ denied), as supporting an amendment. In *Kirby*, the court permitted a trial amendment denying a partnership allegation after both parties rested. The court of appeals found no error in permitting the amendment. *Id.* at 353. Robbins seeks to distinguish *Kirby* on the basis that there, the case presented by both parties focused largely on the existence of a partnership and the issue was tried by consent.

Trial of an issue by consent is relevant to the requirement of Rule 301 that the judgment rendered must conform to the pleadings. Under Rule 63, however, the relevant issue is whether the amendment was a surprise and, under Rule 66, whether the amendment will prejudice the non-movant. The fact that the parties fully litigated the issue without objection in *Kirby* is relevant to that court's finding that there was no surprise to the party alleging a partnership.

6

Robbins cites cases such as *Washburn v. Krenek*, 684 S.W.2d 187 (Tex.App.–Houston [14th Dist.] 1984, writ ref'd n.r.e.), and this court's opinion in *Garver v. First National Bank of Canadian*, 432 S.W.2d 745, 748 (Tex.Civ.App.–Amarillo 1968, writ ref'd n.r.e.), for the proposition that the failure to file a verified denial of partnership is deemed admitted. While those cases support that proposition, it is not relevant to the issue of surprise.

The record does not support Robbins's claim of surprise. Appellees' motion for summary judgment, filed some ten months before trial, specifically challenged Robbins's partnership claim. Robbins's response to the motion devoted three pages to the partnership issue, but failed to challenge the lack of a verified denial of that partnership.

Robbins next cites *Smith Detective Agency v. Stanley Smith Security, Inc.*, 938 S.W.2d 743 (Tex.App.–Dallas 1996, writ denied), to support his contention that a party seeking leave to file a trial amendment must tender the written amendment for filing. *Id.* at 745. An examination of *Smith* reveals that the court made the statement cited by Robbins in the context of delineating conditions necessary to give a trial court discretion to *deny* a trial amendment. *Id.* Additionally, *Smith* relied on *Century Rental Equipment, Inc. v. Neo-Flasher Mfg. Co.*, 378 S.W.2d 957 (Tex.Civ.App.--Houston 1964, no writ), which held that presenting a proposed amendment in writing would be "the better practice" because the party opposing the amendment would "not [be] in a position to show prejudice until he was acquainted with the contents of the amendment." *Id.* at 959. The substance

7

of the amendment sought by appellees here was clearly set out in the oral motion before the trial court. The failure to tender a written amendment did not undermine Robbins's ability to make a meaningful response.

Robbins has failed to meet his burden to show the amendment was a surprise or prejudiced his claims or defenses. Therefore, we cannot say that the trial court abused its discretion in permitting the trial amendment and we overrule Robbins's first issue.

Directed Verdict

We next consider Robbins's challenges to the directed verdict. A directed verdict for a defendant may be proper when a plaintiff fails to present evidence raising a fact issue essential to the plaintiff's right of recovery or if the plaintiff admits, or the evidence conclusively establishes, a defense to the plaintiff's cause of action. *Prudential Ins. Co. of America v. Financial Review Services, Inc.*, 29 S.W.3d 74, 77 (Tex. 2000). The evidence must be considered in the light most favorable to the non-movant. *White v. Southwestern Bell*, 651 S.W.2d 260, 262 (Tex. 1983). If there is conflicting probative evidence, the issue is one for determination by the jury. *Id.* The granting of an instructed verdict on a claim can be affirmed even if the reason given by the trial court is erroneous, if another ground exists to support the directed verdict. *Kelly v. Diocese of Corpus Christi*, 832 S.W.2d 88, 90 (Tex.App.–Corpus Christi 1992, writ dism'd w.o.j.).

8

Robbins initially asserts that there was legally sufficient evidence to support his claims for quantum meruit, partnership, fraud, breach of fiduciary duty, promissory estoppel, negligent misrepresentation, constructive trust, and exemplary damages. Consideration of this issue is simplified by noting that some of these claims are not recognized causes of action in Texas.

Promissory estoppel is a defensive doctrine which permits one who has relied on a promise to prevent an attack on the enforceability of the promise. *Wheeler v. White*, 398 S.W.2d 93, 97 (Tex. 1965). The doctrine does not establish a cause of action or, in the words of our supreme court, does "not operate to create liability where it does not otherwise exist." *Hruska v. First State Bank*, 747 S.W.2d 783, 785 (Tex. 1988). Similarly, there is no independent cause of action for exemplary damages. They are simply an element of damages recoverable under a cause of action. *See* Tex. Civ. Prac. & Rem. Code Ann. § 41.002(a) (Vernon Supp. 2001).

**Quantum Meruit**

Quantum meruit is an equitable remedy which is based on an implied agreement to pay for benefits received. *Iron Mountain Bison Ranch v. Easley Trailer Mfg. Inc.*, 42 S.W.3d 149, 159 (Tex.App.–Amarillo 2000, no pet.). Significantly, a party may recover under quantum meruit only when there is no express contract covering the services or materials furnished. *Vortt Exploration Co. v. Chevron U.S.A., Inc.*, 787 S.W.2d 942, 944 (Tex. 1990).

Robbins sought recovery under quantum meruit for the labor he expended in establishing the Door and for which he was not paid. He cites *Truly v. Austin*, 744 S.W.2d 934 (Tex. 1988), as an exception to the general rule stated in *Vortt Exploration*. Robbins contends *Truly* supports his contention that he can recover under quantum meruit for partial performance of a contract, even if he was in breach of the contract. *Id.* at 937. The holding in *Truly* does not support this contention.

In *Truly*, the plaintiff sought to recover the value of services he provided to a joint venture. The services were provided under a contract which would have been paid $2,000 per month for supervision of a construction project. *Id.* at 936. The project fell apart when Truly breached a portion of the contract concerning his acceptance of personal liability. The court recognized some circumstances in which a party could obtain quantum meruit damages for services performed under a contract, but it held that because quantum meruit is an equitable remedy, the plaintiff's breach of the contract *precluded* his recovery. *Id.* at 938.

It is undisputed that Payne and Robbins had a contract governing the services provided by Robbins and that it was Robbins who ceased participating in the business after eight months. In spite of these undisputed facts, Robbins contends the trial court erred in finding he breached the contract because it erroneously construed the agreement in favor of Payne after finding it ambiguous. The record citation provided does not support

Robbins's statement that the trial court found the contract ambiguous. Nor do we find any support in the record for a finding that the contract was ambiguous.

Robbins does not directly dispute the fact that he breached the contract, but argues that the jury should have been given the opportunity to decide if the breach was "legally excused." Robbins fails to point to authority or evidence on which the jury could have found his breach "legally excused." Moreover, Payne correctly notes that an allegation that a breach was excused is an affirmative defense. *See Bracton Corp. v. Evans Const. Co.*, 784 S.W.2d 708, 710 (Tex.App.--Houston [14th Dist.] 1990, no writ). Robbins did not plead any such defense.

Because the services at issue were governed by an express contract and Robbins failed to establish the applicability of an exception to the general rule, the trial court did not err in granting a directed verdict on this claim.

**Partnership**

The exact nature of Robbins's claim for "partnership" is unclear. Applying a liberal construction to his brief, we will construe his claim as one for a judicial declaration that the parties were partners. In support, he first argues that Payne "failed to verify a denial specific to the allegation of a partnership between Robbins and Payne." Examination of the amended answer shows this claim is without merit. The amended answer specifically provides, "Plaintiffs/Counter-defendants [Payne and the Door] specifically deny the

11

allegation [that] Thomas K. Payne and Ty Robbins were partners." The denial is clear and unequivocal.

Robbins next argues that the undisputed facts establish a partnership between himself and Payne. As support, he cites a portion of the Texas Revised Partnership Act, which defines a partnership as "an association of two or more persons to carry on a business for profit as owners." Tex. Rev. Civ. Stat. Ann. art. 6132b-2.02 (Vernon Supp. 2001). Robbins omitted the beginning of that sentence which provides, "Except as provided by Subsections (b) and (c), an association of two or more persons . . . ." Subsection (b) specifically provides that an "association or entity created under a law other than the laws described under Subsection (a) is not a partnership." *Id.* The parties' written agreement did not give Robbins an ownership interest. Rather, it evidences an intent to form a corporation, and the record shows that a corporation was formed. The record does not support a finding of partnership and the trial court did not err in directing a verdict on this issue.

**Fraud**

The elements of a claim for fraud are: 1) a material representation that was false; 2) the person who made the representation knew it was false or made it recklessly as a positive assertion without any knowledge of its truth; 3) it intended to induce another to act upon the representation; and 4) that person actually and justifiably relied upon the representation and thereby suffered injury. *See Trenholm v. Ratcliff*, 646 S.W.2d 927, 930

12

(Tex. 1983).  The representation on which Robbins bases his claim is that Payne "could expect a salary, or 'draw', as part of the operating expenses included in determining 'operating profits.'"  Robbins does not dispute that the parties' written agreement does not provide for any payment to him unless the business made a profit.  He cites two items of testimony in support of his position that Payne made a fraudulent representation.  The first is Payne's testimony that profits made before payout would be distributed 25% to Robbins and 75% to Payne.  The second is testimony by Robbins that after the business had not earned any profit in several months, Robbins asked Payne to "activate a concept of a draw that we had discussed earlier."

This evidence does not support even an inference that Payne made any representation that the agreement provided Robbins would receive any payments before the business earned a profit or that payments to Robbins would be treated as operating expenses in determining whether the business earned a profit.  Although Robbins suggests that Payne's right to make all of the business decisions before payout gave him control over whether the business made a profit, he makes no claim of any decision which delayed or prevented the business from earning a profit and the record shows that Robbins maintained the records of the business.

Robbins argues the trial court prevented him from effectively developing evidence necessary to establish his fraud claim when it sustained objections made by Payne.  However, Robbins failed to request an opportunity to create a bill of exceptions on this

13

point, so there is nothing for us to review and any complaint on this issue has been waived.

Because there is nothing in the record to support a finding that Payne misrepresented the terms of the agreement, there was no evidence to support a finding of fraud and the trial court did not err in directing a verdict on this cause of action.

**Breach of Fiduciary Duty**

In support of his claim for breach of fiduciary duty, Robbins cites *Crim Truck & Tractor Co. v. Navistar International, Corp.*, 823 S.W.2d 591 (Tex. 1992), for the proposition that a confidential relationship duty may arise from moral, social, domestic, or personal relationships and the existence of such a duty is a question of fact. *Id.* at 594. He argues the evidence of the party's prior business relationship raised a question of fact for the jury. We disagree.

The court in *Crim Truck* stated the existence of a confidential relationship is ordinarily a question of fact but recognized that when the issue is one of no evidence, the question is one of law. *Id. (citing Thigpen v. Locke*, 363 S.W.2d 247, 253 (Tex. 1962)). The court held the placement of some trust and reliance by one party to a contract on the other party does not create a confidential relationship. 823 S.W.2d at 594. The "subjective trust" of one party in the other does not create a confidential relationship. *Id.* at 595.

14

As in *Crim Truck*, there is no evidence that the relationship between Robbins and Payne went beyond that ordinarily existing between parties to a contract of this type. The relationship was not longstanding. Although Payne had significantly greater business knowledge and experience than Robbins, Robbins had much more knowledge of the technology and internet service provider industry.

Robbins next argues that Payne admitted owing a fiduciary duty to Robbins. When questioned about the nature of the relationship, Payne was very clear that he was not expressing an opinion on the legal status of the relationship because, in his words, "from a legal standpoint, I don't think that I understood, and I'm not sure I understand the term. I know what it meant to me and I know what it means to me." This testimony is not evidence that Payne owed Robbins a fiduciary duty.

Even if there was some evidence of a fiduciary relationship, Robbins presented no evidence of breach. The only evidence cited in support is his testimony that when he reported to Payne that working at the Door was causing problems in his marriage and that he was concerned about his father's health, Payne reportedly responded that he should be prepared to "divorce my wife and bury my father to stay in [the] business." Accepting this statement as true, it could not support a claim for breach of fiduciary duty because nothing about the relationship of the parties related to Robbins's reliance on Payne for personal advice. The trial court did not err in granting a directed verdict on this cause of action.

15

**Negligent Misrepresentation**

The only argument in Robbins's brief in challenge of the directed verdict on his fraud claim is that Payne's motion failed to specifically address that cause of action. We disagree. Payne's motion alleged there was no evidence of a false representation. This was relevant to both Robbins's fraud claim and his negligent misrepresentation claim. Without evidence of a misrepresentation, Robbins cannot establish his claim for negligent misrepresentation. *Zipp Industries, Inc. v. Ranger Ins. Co.*, 39 S.W.3d 658, 667 (Tex.App.--Amarillo 2001, no pet.).

**Constructive Trust**

Constructive trust is a remedy imposed when a person holding title to property would be unjustly enriched if permitted to keep the property. *Crowder v. Tri-C Resources, Inc.*, 821 S.W.2d 393, 399 (Tex.App.–Houston [1st Dist.] 1991, no writ). Although some cases appear to have treated it as a cause of action, *see Weaver v. Stewart*, 825 S.W.2d 183, 185 (Tex.App.--Houston [14th Dist.] 1992, writ denied), in his brief, Robbins concedes that he raised constructive trust "as additional remedies related to other causes of action." Because we hold the trial court did not err in granting a directed verdict on each of Robbins's causes of action, we need not address issues related to the remedies he sought.

16

Robbins also contends that Payne's motion should have been denied because it failed to state the specific grounds on which it was sought as required by Rule of Civil Procedure 268. We need not express any opinion on whether the motion contained the requisite specificity as to each cause of action because Robbins's failure to present the trial court with an objection on that basis waived any error. *See* Tex. R. App. P. 33.1. We overrule Robbins's second issue.

In his third issue, Robbins assigns error to the directed verdict because he presented some evidence of meritorious defenses. He initially argues the record establishes a question of fact existed on whether the written contract represented the entire agreement of the parties. Specifically, he argues the parties had differing intent on whether payment to Robbins would be included in determining operating expenses. In support, he cites his testimony at trial where he sought to introduce a document listing "concerns" he had before the written contract was executed. Payne argued that any prior negotiations or agreements had merged into the written agreement, which covered the subject of payments to both parties. *See Carr v. Weiss*, 984 S.W.2d 753, 764 (Tex.App. --Amarillo 1999, pet. denied) (noting merger occurs when the same parties to an earlier agreement later enter into a written agreement covering the same subject matter). The trial court examined the document and found the matters were covered by the written agreement. The document Robbins sought to introduce is not contained in this record. Consequently, there is nothing to show the trial court erred in its determination that the agreement encompassed those issues and the doctrine of merger was applicable.

17

Robbins next argues there was evidence supporting a finding that any breach of the contract by him was legally excused. He contends the contractual requirement that the business make a profit before Robbins was paid, and that Payne recoup his investment before Robbins had an ownership interest, were conditions precedent and the giving effect to them was "contrary to guiding principles of law" (citing *Criswell v. European Crossroads Shopping Center, Ltd.*, 792 S.W.2d 945 (Tex. 1990)). We disagree.

In *Criswell*, the issue was whether a contractual provision that an engineer would be paid when real property was sold as a "condominium project" precluded his payment when the property was sold before it was remodeled into condominiums. *Id.* at 947. The court noted that in construing a contract, forfeiture by finding a condition precedent is to be avoided when another reasonable reading of the contract is possible, *Schwarz-Jordan, Inc. v. Delisle Construction Co.*, 569 S.W.2d 878 (Tex. 1978), and "because of their harshness in operation, conditions are not favorites of the law." *Sirtex Oil Industries, Inc. v. Erigan*, 403 S.W.2d 784, 787 (Tex. 1966). It found the quoted language did not create a condition precedent which would preclude the engineer's payment. *Criswell,* 792 S.W.2d at 948.

Accepting Robbins's premise that a profit and payout were conditions precedent, he offers no authority supporting the conclusion that such conditions would excuse his breach. Unlike *Criswell*, the contractual requirements at issue here would not work a forfeiture. The structure of the contract divided the risk of establishing the business. The

18

risk Robbins accepted of working without pay if the business was not successful, is no more onerous than the risk Payne accepted in financing the business without any guarantee his investment would be repaid. The public policy considerations relevant in *Sirtex Oil, supra*, are not applicable here. Also, as noted above, an allegation that a breach of contract is legally excused is in the nature of an affirmative defense, but Robbins's pleadings contained no such defense.

Robbins claims the evidence presents a fact question on whether the agreement was supported by consideration and mutuality. He argues that the agreement lacks consideration because Payne "gave up nothing[, he] surrendered no contractual rights and was required to do nothing." This ignores the plain language of the agreement and the evidence presented at trial. The first paragraph of the agreement imposed on Payne the obligation to fund the start-up costs of the business and the evidence showed he invested over $100,000 in satisfaction of that obligation. The obligation was valid consideration and made the parties' promises mutual. *Northern Nat. Gas Co. v. Conoco, Inc.*, 986 S.W.2d 603 (Tex. 1998); *Texas Gas Utilities Co. v. Barrett*, 460 S.W.2d 409, 412 (Tex. 1970).

Finally, Robbins argues that there was evidence establishing a fact question on whether the business had reached "payout" under the contract. It cites a profit and loss statement as support for his claim that the business had $2,398,504.21 in gross profit. Examination of the document shows this figure excluded all of the expenses of operating the business other than cost of goods sold. After deducting those expenses from the gross

19

profit, the document shows the business had a net loss of $272,479.79.  None of the financial records presented into evidence could support a finding that the business had reached payout under the agreement.  We overrule appellant's third issue.

In summary, all of appellant's issues are overruled and the judgment of the trial court is affirmed.


John T. Boyd
Chief Justice

Publish.