In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-16-00141-CV**
_____

**MARK DAVIS AND ANGELIA DAVIS, Appellants**

**V.**

**JACQUELYN GARRETT AND ALBERT GARRETT, Appellees**

**On Appeal from the 284th District Court**
**Montgomery County, Texas**
**Trial Cause No. 14-09-09775-CV**

**MEMORANDUM OPINION**

Appellees Jacquelyn Garrett[1] and Albert Garrett filed a petition to establish a

private easement on property owned by appellants, Mark Davis and Angelia Davis.[2]

After a bench trial, the trial court signed a judgment establishing a private easement,

---

[1]Before trial began, counsel for the Garretts represented that Jacquelyn had died during the pendency of the case.

[2]For clarity, when referring to the parties individually, we will use their first names. We note that, in various parts of the record, Angelia's first name is also spelled as Angela.

in which it found that an easement existed, based upon express acknowledgment, by necessity, and by estoppel, and the trial court also determined that the easement's width is "equal to the width of a standard county road." In four appellate issues, the Davises argue that (1) the evidence was legally and factually insufficient to support the trial court's finding of easement by necessity and the trial court abused its discretion by granting a trial amendment for that cause of action; (2) the evidence was legally and factually insufficient to support the trial court's finding of an express easement and the evidence conclusively established that the parties never agreed that an easement existed on the land; (3) the trial court erred by finding an easement by estoppel because it was not supported by pleadings, was not requested in a trial amendment, and was not supported by legally and factually sufficient evidence; and (4) the trial court erred by altering the width of the easement because the Garretts did not request that relief and the evidence conclusively established that the parties agreed that the current road is fourteen feet wide. We affirm the trial court's judgment.

## PROCEDURAL BACKGROUND

In their petition to establish a private easement, the Garretts pleaded that the Davises had blocked them from the use of their property by erecting a gate and publicly stating that the Garretts do not have an easement. According to the Garretts'

2

petition, prior to April 25, 1998, Sydney and Ruth Davis owned real property, comprised of Tract A and Tract B. The Garretts alleged that while Sydney and Ruth Davis owned the two tracts, they used Tract A to further the use of tract B by driving vehicles on a road through Tract A to access Tract B, and that "[t]his use of Tract A was necessary for the property owner to get the full use and enjoyment of Tract B." According to the Garretts' petition, Sydney and Ruth Davis sold Tract B to Mr. and Mrs. Wilbur Houdek, and Mrs. Houdek then sold Tract B to the Garretts in 1997.

The Garretts pleaded that Sydney and Ruth Davis "failed to grant any easement for the continued use of Tract A for the [b]enefit of Tract B, despite the fact that *the conveyance locked Tract B, leaving its owner no access to the public highway other than by crossing Tract A*." (emphasis added) The Garretts' petition alleged that after Mrs. Houdek represented that an easement would exist on Tract A, the Garretts continued to use Tract A, and Mark and Angelia allowed the Garretts to drive on Tract A to reach Tract B. In addition, the Garretts asserted that their use of the easement had been open, notorious, and continuous for ten years or more before the date the Garretts' suit was filed. According to the Garretts' petition, appellants began to affirmatively interfere with the Garretts' use of the road in 2013, including erecting a gate that prevented the delivery of mail to the Garretts' home, blocking the road with vehicles, refusing to allow the fire department access to the property,

3

and preventing the Garretts from repairing the road. The Garretts requested that the trial court declare their easement valid, permanently enjoin appellants and their agents, servants, and employees from interfering with the Garretts' use of the easement, and award the Garretts damages and costs of suit.

THE EVIDENCE

Albert testified that he began renting this ten-acre property from an individual named Mrs. Houdek, and eventually purchased the property from her in 1997. The deed was recorded in 1998. According to Albert, in 1997 and 1998, he accessed the property by exiting from Daw Collins onto Davis Road and driving through some property owned by a paper mill. Albert explained that "at that time[,] the road was the same from Daw Collins all the way to my property. Same consistency, same surface." According to Albert, the road was "composite asphalt and gravel." Albert testified that after he purchased the property in 1998, county equipment arrived to pave the road, and the county paved the road only halfway to his home and left the rest of the road as it was. Albert testified that he continued to use the road, just as he had before.

According to Albert, if he does not have access to the subject road, he cannot access his property because it is "completely surrounded by a paper company tree farm[,]" and the paper company is unwilling to sell any property for a road. Albert

4

explained that the road at issue is "the quickest and only way" to reach a public road from his property. Albert testified that Mrs. Houdek purchased the property from Mr. and Mrs. Sydney Davis in 1963,[3] and Houdek used the same road to access the property. Albert testified that his wife, Jacquelyn, ran a dog and bird breeding business from the property for about ten years.

Albert explained that since the case began, he transferred six acres to his son because his son's family came to live with Albert. Albert testified that the road now serves both pieces of property. Albert explained, "I need legal access so I can get a home improvement loan if I want one, so I can sell my property if I want. I tried to get a reverse mortgage and couldn't because I didn't have a defined legal access." Albert testified that when he moved onto the property, he thought he had actual access. Albert testified that his access to the road was blocked during the middle of 2012, when a gate was erected. Albert testified that in a previous petition he filed in Justice of the Peace Court, he described the road as fourteen feet wide.

Albert explained that he is unaware of any written easement that gives him rights to the road, and that the deed to the property did not reference access to the road. In addition, Albert explained that when he bought the property, he never spoke to Sydney Davis or Mrs. Houdek about the subject road. Albert testified that he

---

[3]The record indicates that Sydney Davis is appellant Mark Davis's father.

would not have purchased the property if he did not believe he had free and clear access. Albert testified that the Davises did not object to his use of the road or deny him access to the road until he put the property up for sale. Albert testified that when he realized he needed legal access to be able to sell the property, county engineers suggested to him that he get the Davises to sign an easement.

After Albert's testimony, his counsel requested a trial amendment to add causes of action for easement by prescription and easement by necessity. The Davises' counsel objected to the addition of a cause of action for easement by necessity because he believed the case was about easement by prescription. The trial court granted Albert's counsel's request for a trial amendment. Albert's counsel rested after testifying regarding his attorney's fees.

Mark testified that he has lived at the same location for thirty-two years, and he is the owner of record of the property pursuant to a deed. Mark denied that any written easement existed. Mark also testified that Albert bought part of the property from Mrs. Houdek, and he testified that he met Albert during that time. According to Mark, Albert initially rented the property, and when Mark found out that he was buying the property, Albert approached Mark and his father and asked if he could get an easement. Mark testified that he told Albert he would not sell or give him an easement, but that he could use the road to enter and exit the property. Mark

explained that the power company has an eight-foot easement to use the road, but he declined the power company's request to widen the easement to fifteen feet. Mark further testified that the telephone company has a service line along the road.

Mark explained that he saw Albert using the road regularly, and he also saw U.S. mail trucks and other delivery service trucks using the road. According to Mark, in 2008 or 2009, many people who were using the road were being noisy and stirring up dust, and packs of five to ten motorcycles often used the road. Mark testified that the gate was erected because things had been stolen from the property, including some items belonging to Albert. Mark explained that he gave Albert a key to the gate. The parties stipulated that the road in question runs through Mark's property and onto the Garretts' property. Mark testified that the road is approximately fourteen feet wide, but that two cars could pass "[p]ossibly in a pinch[.]" The Davises rested at the conclusion of Mark's testimony.

After a recess, the trial court declared that an express easement, an easement by necessity, and easement by estoppel exist as to the road in question. The trial court declared that the easement exists "in a width equal to the width of the portion of that easement maintained by the County, since I don't have any evidence other than approximately 14 feet." The trial court also awarded attorney's fees to the Garretts.

On February 3, 2016, the trial court signed a written judgment memorializing its findings. After both sides requested findings of fact and conclusions of law, the trial court filed findings of fact and conclusions of law. In its findings of fact, the trial court found, among other things, that the Garretts' property is landlocked; the Garretts have no other way to access their property than to cross the Davises' property; the Garretts have used the road since purchasing the property in 1998; and an easement across the Davises' property "is necessary because no public roads touch the land owned by Albert and Jacquelyn Garrett." In its conclusions of law, the trial court listed the elements of proof regarding the various types of easements it had declared existed, but did not explicitly state that the Garretts had proven those elements. However, as stated above, the trial court did state on the record at the conclusion of the trial that an easement by necessity existed.

## ISSUE ONE

In their first issue, the Davises argue that the trial court erred by declaring that an easement by necessity existed because "the trial amendment to add that cause of action was an abuse of discretion" and the evidence was legally and factually insufficient to prove the Garretts' entitlement to an easement by necessity. We turn first to the Davises' argument regarding the granting of a trial amendment. We review a trial court's decision to permit a trial amendment for abuse of discretion.

8

*Miller v. Wal-Mart Stores, Inc.*, 918 S.W.2d 658, 666 (Tex. App.—Amarillo 1996, writ denied). A trial court abuses its discretion when it acts without reference to any guiding rules or principles; that is, whether its decision was arbitrary or unreasonable. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241-242 (Tex. 1985).

Rule 63 of the Texas Rules of Civil Procedure provides as follows, in pertinent part: "[A]ny pleadings . . . offered for filing within seven days of the date of trial or thereafter . . . shall be filed only after leave of the judge is obtained, which leave shall be granted by the judge unless there is a showing that such filing will operate as a surprise to the opposite party." Tex. R. Civ. P. 63. "A court may not refuse a trial amendment unless (1) the opposing party presents evidence of surprise or prejudice, or (2) the amendment asserts a new cause of action or defense, and thus is prejudicial on its face." *State Bar of Tex. v. Kilpatrick*, 874 S.W.2d 656, 658 (Tex. 1994).

As discussed above, the Garretts' petition pleaded that their property was landlocked, and that their only means of reaching a public road from the property was by using the road across the Davises' property. Although counsel objected to the trial amendment on the grounds that he believed the trial was focused on the issue of an easement by prescription, we conclude that the Garretts' pleading

9

provided adequate notice that easement by necessity could be at issue. Consequently, the Davises failed to demonstrate that the trial amendment operated as a surprise to them. *See* Tex. R. Civ. P. 63. In addition, the Davises did not demonstrate that the amendment presented a new cause of action. *See id.*; *see also Kilpatrick*, 874 S.W.2d at 658. Accordingly, the trial court did not abuse its discretion by granting the Garretts' request for a trial amendment to explicitly plead a cause of action for easement by necessity.

We now turn to the legal and factual sufficiency of the evidence regarding the trial court's finding that an easement by necessity existed. We review the trial court's findings for legal and factual sufficiency of the evidence using the same standards applied in reviewing the legal and factual sufficiency of the evidence supporting a jury's answer to a jury question. *Anderson v. City of Seven Points*, 806 S.W.2d 791, 794 (Tex. 1991). Findings of fact in a case tried to the court have the same force and dignity as a jury's verdict. *Id.* at 794. When the appellate record contains a reporter's record, the trial court's findings are binding only if supported by the evidence. *Aldine Indep. Sch. Dist. v. Ogg*, 122 S.W.3d 257, 265 (Tex. App.—Houston [1st Dist.] 2003, no pet.).

In a legal sufficiency review, we credit favorable evidence if a reasonable factfinder could, and disregard contrary evidence unless a reasonable factfinder

10

could not. *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). Evidence is legally sufficient if it "would enable reasonable and fair-minded people to reach the verdict under review." *Id*. The factfinder is the sole judge of the credibility of the witnesses and is responsible for resolving any conflicts in the evidence, weighing the evidence, and drawing reasonable inferences from basic facts to ultimate facts. *Id*. at 819-21; *Sw. Bell Tel. Co. v. Garza*, 164 S.W.3d 607, 625 (Tex. 2004). In a factual sufficiency review, we consider and weigh all of the evidence, and we will set aside the trial court's finding only if the evidence is so weak or the finding is so against the great weight and preponderance of the evidence that it is clearly wrong and unjust. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001). As long as the evidence falls within the zone of reasonable disagreement, we cannot substitute our judgment for that of the factfinder. *City of Keller*, 168 S.W.3d at 822.

"To successfully assert a necessity easement, the party claiming the easement must demonstrate: (1) unity of ownership of the alleged dominant and servient estates prior to severance; (2) the claimed access is a necessity and not a mere convenience; and (3) the necessity existed at the time the two estates were severed." *Hamrick v. Ward*, 446 S.W.3d 377, 382 (Tex. 2014). As discussed above, Albert testified that without access to the road across the Davises' property, he cannot access his property. Albert explained that his property is completely surrounded by

11

a paper company tree farm, which will not grant him an easement, and the road at issue is "the quickest and only way[]" to reach a public road from his property. The trial court also had documents and discovery responses before it showing that the dominant and servient estates were unified prior to severance, and that the necessity existed when the two estates were severed. Crediting favorable evidence if a reasonable factfinder could, and disregarding contrary evidence unless a reasonable factfinder could not, we conclude that the evidence would enable reasonable and fair-minded people to conclude that an easement by necessity existed and, therefore, is legally sufficient. *See City of Keller*, 168 S.W.3d at 827. Furthermore, considering and weighing all of the evidence, we conclude that the evidence supporting the existence of an easement by necessity is not so weak nor is the finding so against the great weight and preponderance of the evidence as to be clearly wrong and unjust. *See Francis*, 46 S.W.3d at 242. Therefore, the evidence is factually sufficient. Accordingly, we overrule issue one. Having found that the trial court did not abuse its discretion by allowing the trial amendment and that the evidence is legally and factually sufficient to support the trial court's finding that an easement by necessity existed, we need not address issues two and three. *See* Tex. R. App. P. 47.1.

ISSUE FOUR

We turn now to issue four, in which the Davises argue that the trial court erred by "altering" the width of the easement because the Garretts did not request that relief and the evidence conclusively established that the parties agreed that the road is fourteen feet wide. The Garretts' petition did not specify the width of the easement they were requesting the trial court to declare. As discussed above, Albert testified that the county paved the road halfway to his home. In addition, Mark testified that the power company has an easement to use the road, and that the telephone company has installed a line along the road. Albert testified that he had previously asserted that the road was fourteen feet wide, and Mark testified that the road is fourteen feet wide. As discussed above, in its judgment, the trial court determined that an easement with "the width being equal to the width of a standard county road[]" existed.

Section 251.007 of the Texas Transportation Code sets forth the width requirements for first-class, second-class, and third-class county roads. Tex. Transp. Code Ann. § 251.007(c), (d), (e) (West 2013). The statute requires that a first-class county road must be not less than forty feet wide or more than one hundred feet wide, and the causeway must be at least sixteen feet wide; a second-class county road must meet the requirements applicable to a first-class road; and a third-class

13

county road may be less than forty feet wide but not less than twenty feet wide, and the causeway may be less than sixteen feet but not less than twelve feet wide. *Id.*

The evidence did not establish the classification of the county's portion of the subject road. Although Albert testified that he had alleged in another proceeding that the road is fourteen feet wide, and Mark testified that the road is currently fourteen feet wide, the trial court could have discounted Albert's testimony about the prior filing in the Justice of the Peace Court and could have chosen to disbelieve Mark's testimony regarding the width of the road. *See City of Keller*, 168 S.W.3d at 819-21; *Sw. Bell Tel. Co.*, 164 S.W.3d at 625. In addition, the trial court could reasonably have taken into account the testimony that the power company has an easement to use the road, and that the telephone company has installed a line along the road. Because the trial court could have disbelieved the only testimony regarding the width of the road and the width and classification of the county-paved portion of the road were not in evidence, this Court cannot say that the trial court increased the width of the road or erred by determining that the easement is the width of a "standard county road." *See* Tex. Transp. Code Ann. § 251.007(c), (d), (e). The easement that the trial court granted is not wider than that requested by Garretts' pleadings, nor is it wider than could be reasonably inferred from the evidence. We overrule issue four and affirm the trial court's judgment.

AFFIRMED.

                                            _____

                                                STEVE McKEITHEN
                                                  Chief Justice

Submitted on April 25, 2017
Opinion Delivered August 3, 2017

Before McKeithen, C.J., Kreger and Johnson, JJ.