Opinion filed December 20, 2007











 
 
  
 
 







 
 
  
 
 




Opinion filed December 20,
2007

 

 

 

 

 

 

                                                                        In The

                                                                              

    Eleventh
Court of Appeals

                                                                   __________

 

                                                          No. 11-05-00382-CV 

                                                     __________

 

                         UNITED
PLAZA-MIDLAND, L.L.C., Appellant

 

                                                             V.

 

                               FIRST
SERVICE AIR CONDITIONING

CONTRACTORS, INC., Appellee

 



 

On Appeal from the County Court at Law

 

Midland County, Texas

 

Trial Court Cause No. CC-12,073

 



 

  M
E M O R A N D U M  O P I N I O N








First
Service Air Conditioning Contractors, Inc., (First Service), entered into a
contract with United Plaza-Midland, L.L.C. in 1999 to install new equipment and
lighting and to provide maintenance for five years.  The purpose was to provide
a system that would save United money on its electrical bills.  First Service
financed the equipment and its installation.  United was to pay for the
equipment and its installation over time through the energy savings.  The
parties agreed that a portion of the payments from United would be based on energy
savings that the new equipment and system would achieve.  United experienced
difficulty in making the monthly payments, and the parties modified their
contract in 2001.  Under the contract as modified, United agreed to pay $2,500
each month; the $2,500 fixed payment was to include $1,600 for the maintenance
service and $900 for the balance owed on the equipment.

After
approximately eighteen months of paying $2,500 per month, United decided to
reduce the payments to $900 per month.  First Service filed suit for breach of
contract in February 2004.   United then counterclaimed for breach of contract,
conversion, and fraud.  At the end of the jury trial, the trial court granted
directed verdicts to First Service on United=s
counterclaims.  Based on the jury verdict, the trial court entered a final
judgment awarding damages to First Service of $98,155.51 and attorneys= fees of $70,000.  We
affirm.

 Background
Facts

United
was formed to acquire the United Plaza Building in Midland.  The building was
United Plaza-Midland=s
only asset, and both will be referred to as United.  Yigal Bosch, the corporate
representative of United, was also the chief executive officer of a company in
Houston that located investors to purchase buildings, apartments, and
condominiums.  United acquired the Midland building in 1998.

Gilbert
Guzman, a salesman with First Service, contacted Carol Hastings with United
shortly after the acquisition.  Hastings was the building=s office manager from 1995
to 2002.  Through  Hastings, Guzman called Bosch and explained to him how First
Service could save United money by changing the lighting system and other
equipment and by providing a maintenance agreement.  Bosch subsequently came to
Midland and, on behalf of United, executed an agreement with First Service on
April 29, 1999.








The
contract set forth the maintenance service that First Service would provide and
the equipment that First Service would purchase and install as part of a new
energy management system.  The agreement allowed United to have  the new
equipment installed without any up-front payment.  To finance the purchase and
installation of the equipment, First Service borrowed $55,000 from Bank United
in Midland.  United was to pay $900 monthly for five years and pay 100% of the
actual savings in its energy costs each month to First Service.  First Service
was to recoup the cost of the equipment and its installation costs through the
monthly energy savings that the parties anticipated that United would achieve. 
As shown in the agreement, First Service estimated that the annual savings
would be $12,932.88.  

The
monthly savings were to be calculated using the Faser Energy Accounting
Software referred to under Article III, section B of the Energy Saving
Agreement section of the overall contract.  David Grosse of First Service
testified that, for the Faser software to work properly, First Service needed
five years of United=s
monthly electric bills.  Bosch wrote a letter dated February 17, 2000, to TXU
Electric requesting electrical bills from January of 1991 to 1999.  Receiving
no response, Bosch wrote another letter to TXU Electric dated April 26, 2000,
requesting the bills for the years 1994 through May 1999.  Again, he received
no response from TXU Electric.  Bosch provided First Service with United=s 1998 and 1999 electric
bills.  Instead of using the Faser software to calculate the monthly savings,
First Service could only compare the 1998 and 1999 monthly bills to the monthly
bills after installation of the new equipment.  Grosse acknowledged that this
latter method was not as accurate as using the Faser software.  Bosch, however,
acknowledged that the new system did reduce United=s monthly electrical bills.  United paid the
$900 monthly fee plus the calculated monthly savings amount to First Service
for a number of months.

Bosch
admitted that United had breached the agreement by early 2001 because it had
failed to make the monthly payments.  Bosch testified that the purchase of the
United building had been a bad investment and that the rental income had been
insufficient to pay the bills.  Under the agreement, First Service had the
right upon default to declare the entire amount owed by United under the
contract immediately due and payable.  To avoid First Service=s exercise of that right,
Bosch met with Grosse and Mike Perkins of First Service.  After the meeting,
Bosch wrote Grosse on February 19, 2001, proposing that they modify their
agreement to eliminate the energy savings payment and, instead, agree that
United would pay $2,300 each month to cover both the service portion and the
installation-of-equipment portion for the remaining term of the contract.








By
letter dated March 14, 2001, Grosse presented a counteroffer.  He first
explained that the energy savings payments had included both repayment for the
installation of lights and the new control system and A$700 of the $1,600@ per month for the maintenance service.  The
balance of the $1,600 monthly service payment, $900, was covered by the fixed
$900 monthly payment.  Instead of the $2,300 per month proposed by Bosch,
Grosse proposed that the monthly payment be $2,500 ($1,600 for service and $900
for equipment).  United began paying the $2,500 per month in March 2001 and
continued that monthly payment through the payment on October 10, 2002.

In
October 2002, United decided to unilaterally terminate the service portion of
the agreement.  United then began sending a check for $900 a month.  United
gave no notice to First Service except to send a $900 monthly check instead of
a $2,500 check.  However, United continued to call First Service for service
after October 2002.  First Service responded to some of the calls before
realizing that United was no longer making the service payment.  Grosse
testified that First Service was not paid for some of those calls.  United
stopped the $900 payments in 2003.

First
Service sued United for breach of contract in 2004, seeking the balance owed
for the equipment and the amount owed for the remaining months of service. 
United then counterclaimed for breach of contract, conversion, and fraud.  At
the end of the jury trial, the court granted a directed verdict to First
Service on United=s
counterclaims.  Based on the jury verdict, the trial court entered a final
judgment awarding actual damages to First Service of $98,155.51 and attorneys= fees of $70,000.

Was
United Accorded a Fair Trial?

In
its first issue, United argues that it was denied a fair trial as required by
the due process provisions of the United States Constitution and the Texas
Constitution.  United frames the issue as follows:

Whether
public policy and due process considerations prohibited the trial court from
allowing admitted bias, due to change in counsel and wrongly attributed delays
of trial, to deprive the Appellant of his property without its right to a day
in court by overwhelmingly favorable rulings for Appellee, without legal
justification, concerning evidentiary matters and jury instructions that wholly
precluded the jury from considering viable defenses and counterclaims and
rendered the ultimate verdict on all fronts inevitable prejudicial.

 








 As
support for its denial of due process argument, United argues that the trial
court erred by  excluding testimony of Carla Gentry, by sustaining objections
to questions to Grosse by United=s
counsel, by excluding testimony by Octavia Bunch, by overruling United=s objections to certain
questions of Scott Kidwell (First Service=s
expert on attorneys=
fees), by excluding some documents but allowing others to be introduced, by its
jury charge excluding defenses and counterclaims of United, and by allowing
First Service to violate a motion in limine.  Except for two minor non-harmful
errors, we find that the trial court did not err in the evidentiary rulings
that United complains about.  Based on our review of the entire record, we find
that United was accorded a fair trial.

Litigants
are entitled to a fair trial, not a perfect one.  A trial court=s judgment will be affirmed
in the absence of reversible error.  Tex.
R. App. P. 44, 61; see Christiansen v. Prezelski, 782 S.W.2d 842,
843 (Tex. 1990).  Reversible error occurs only if the trial court=s erroneous ruling either
probably caused the rendition of an improper judgment below or probably
prevented the appellant from properly presenting the case to the court of
appeals.  Tex. R. App. P. 44.1,
61.1.  The first question is, of course, whether the trial court even erred in
its ruling. 

To
obtain reversal on the erroneous exclusion of evidence, an appellant must first
place the evidence or a summary of the evidence in the record, usually through
an offer of proof or a bill of exception.  Tex.
R. Evid. 103(a); Tex. R. App. P.
33.2; Tex. R. Civ. P. 75a.  The appellant must then establish (1) that
the trial court erroneously excluded the evidence, (2) that the excluded
evidence was controlling on a material issue and was not cumulative of other
evidence, and (3) that the error probably caused the rendition of an improper
judgment.  Rule 44.1; Tex. Dep=t
of Transp. v. Able, 35 S.W.3d 608, 617 (Tex. 2000).

On
voir dire, Gentry stated that she had no personal knowledge of any of the
issues involved in this case.  First Service filed its suit on February 12,
2004.  Gentry was employed by First Service from the end of April 2004 through
the end of July 2004; she did not work at First Service from 1998 through
2003.  Nor did she work at United during the relevant time.  Gentry began
working for Bosch in January 2005.  Gentry stated that her knowledge of the
case came to her through Bosch or United=s
attorney.  United=s
counsel also sought to introduce some pictures that Gentry had taken two months
prior to trial.  It appears that United=s
counsel was attempting to show that the lighting at United was insufficient. 
The trial court correctly excluded testimony from Gentry and the pictures she
took.  Neither her testimony nor the pictures were shown to be relevant to the
events that occurred prior to the filing of the lawsuit.








United
argues that it was Aalso
denied its day in court when the trial court would stop important questioning
that would impeach Grosse or that would substantiate [its] defense or
counterclaims.@ 
United did not set forth the particular rulings or provide citations to the
record except to simply refer the court to volumes four and five of the
record.  United has failed to provide this court with a clear and concise
argument for the contentions made and with appropriate citations to authorities
and to the record.  Tex. R. App. P. 38.1(h). 


 Bunch
was the bookkeeper for First Service from March 1998 until April 2004.  United
complains that, when its counsel was questioning Bunch about First Service=s service contract book,
the trial court sustained First Service=s
objection that questions about all the service contracts were irrelevant. 
First Service=s
objection was that A[t]he
questioning should be whether First Service was complying with this agreement
and whether [Bunch] has any knowledge of this agreement.@  The trial court correctly sustained First
Service=s objection.  

Kidwell,
a Midland attorney, was First Service=s
expert on attorneys=
fees.  United argues that its objection to a question by First Service to
Kidwell about United=s
counsel=s employment
at the Wright law firm should have been sustained.  After the trial court
overruled United=s
objection that the questioning was not relevant, First Service=s counsel asked the
following questions about the employment:

Q.  Ms. Galindo was
employed at the Wright law firm?

 

A.  Yes, sir.

 

Q.  How long did
she work there, do you know?

 

A.  Nine months.

 

Q.  Were you
employed at the same time as she was?

 

A.  No, I wasn=t.

 

Q.  So is it safe to
say if she was at the Wright law firm, she probably did med mal work to a great
extent as well?

 

A.  I would
anticipate so.

 

The trial court
erred in overruling United=s
objection.  The line of questioning was not relevant to First Service=s attorneys= fees.  However, United has
not shown how the admission of the testimony probably caused the rendition of
an improper judgment on the merits of the case.  Rule 44.1; see  Able,
35 S.W.3d at 617.  








United
complains that First Service was allowed to introduce into evidence a
non-certified copy of a document showing that Midland Central Appraisal
District had sued United for tax delinquency.[1] 
First Service introduced the copy of the appraisal lawsuit after Bosch had
testified that he had not been sued by anyone on the United Plaza Building. 
The suit was for $16,752.10, and Bosch testified that United owed less than
that amount.  United is correct that the trial court erred in overruling its
objection that the copy of the court document was not certified and that it was
hearsay.  In reviewing the entire record, however, we do not find that this
ruling resulted in an improper judgment.  See Reinhart v. Young, 906
S.W.2d 471, 473 (Tex. 1995); Gee v. Liberty Mut. Fire Ins. Co., 765
S.W.2d 394, 396 (Tex. 1989). 

United
also complains that First Service was allowed to introduce a copy of a bank
loan document purporting to be the loan to First Service for the equipment for
United even though the loan referred to another building.  United=s objection on appeal does
not comport with its objection to the copy at trial.  When an appellate
complaint fails to comport with the trial objection, nothing is preserved for
review.  G.T. Mgmt., Inc. v. Gonzalez, 106 S.W.3d 880, 885 (Tex. App.CDallas 2003, no pet.); Scurlock
Permian Corp. v. Brazos County, 869 S.W.2d 478, 484 (Tex. App.CHouston [1st Dist.] 1993,
writ denied); see Tex. R. App. P.
33.1(a). 

 
United argues that the trial court erred in denying its introduction into
evidence of TXU Electric=s
recommendations for saving energy.  United contends that Ait would have made a
difference for the jury to see that [First Service=s] supposed energy savings equipment was not a
recognized means of saving energy and [was] not cost-effective for [United].@  United has not provided
record citations for where in the record the TXU Electric recommendations are
and where there is testimony concerning those recommendations.  The record does
reflect that, when United attempted to introduce a customer service packet from
TXU, First Service objected that it had not seen the packet before trial and
that the packet was hearsay.  The record does not provide a basis for finding
that the trial court erred in excluding the packet.








United=s remaining arguments under
its first issue are that the jury charge excluded United=s defenses and counterclaims, that the trial
court=s denial of
United=s motion for
directed verdicts and its granting of First Service=s motion for directed verdict prevented
consideration of viable issues by the jury, that First Service was allowed to
violate the trial court=s
rulings on United=s
motion in limine, that United was denied its right to a meaningful summary of
the evidence in closing, and that United was denied due process by the trial
court=s rulings. 
United has failed to provide this court with a clear and concise argument for
each of the contentions made, and it has failed to supply appropriate citations
to authorities and to the record.  Rule 38.1(h).  United=s first issue is overruled.  United was
accorded a fair trial. 

 Did
the Trial Court Submit an Improper Jury Charge?

In
its second issue, United contends that the trial court committed reversible
error in submitting the jury charge.  However, to preserve error, United had to
make specific objections to the trial court=s
charge, clearly identifying any errors and explaining its grounds for
complaint.  Tex. R. Civ. P. 274.  United makes a global
assertion that A[t]he
trial court denied [a]ppellant each and every instruction and verdict question
that was relevant and for which evidence had been admitted  that potentially
favored the [a]ppellant.@ 
United then states that A[t]he
trial court adopted only the instructions proposed by the [a]ppellee which went
to the issue of a 2001 modified agreement only.@ 
But United has not directed us to where in the record it complained to the
court=s charge, where
the errors allegedly occurred, or what was or is the grounds for its
complaints.

United
has not identified what instructions were erroneous, what questions it wanted
submitted, or what it considers to be facts and law supporting those
questions.   As the Texas Supreme Court explained in State Dep=t of Highways & Pub.
Transp. v. Payne, 838 S.W.2d 235, 241 (Tex. 1992), to preserve error
regarding the jury charge, a party must make the trial court aware of the
complaint, timely and plainly, and obtain a ruling.  The record reflects that
the trial court did overrule a number of United=s
requests, but we are unable to evaluate those rulings.








The
trial court=s jury
charge appears to be correct in light of the record.  The first question in the
charge asked if First Service and United agreed to modify the payment terms of
their original agreement on or about March 14, 2001.  The court instructed the
jury that, in deciding whether the parties agreed to modify their contract, the
jury could consider what the parties said and did in light of the surrounding
circumstances.  The jury answered, AYes.@  The second question was
conditioned upon an affirmative answer to the first question.  The second
question asked if United failed to comply with the modified agreement.  Again,
the jury answered, AYes.@  Based on the record,
those questions were proper.

United
claims that the jury charge did not comport with First Service=s pleadings.  We disagree. 
First Service=s
amended petition alleged that United had breached the contract as it was
modified on March 14, 2001.  First Service=s
answer to United=s
counterclaims asserted affirmative defenses.  We find that First Service=s pleadings provided United
with notice of the relief sought and gave sufficient information to prepare a
defense.  See Paramount Pipe & Supply Co. v. Muhr, 749 S.W.2d 491,
494-95 (Tex. 1988).  We overrule United=s
second issue.

Did the Trial
Court Err in Granting Directed Verdicts Against

United=s Counterclaims for Breach
of Contract, Fraud, and Conversion?

 

In
its fourth issue, United asserts that the trial court erred in granting
directed verdicts against its counterclaims.  A directed verdict for First
Service was appropriate if United did not present evidence raising a fact issue
essential to United=s
right of recovery on its counterclaims or if United admitted or the evidence
conclusively established a defense to United=s
causes of action.  See Prudential Ins. Co. of Am. v. Fin. Review Servs.,
Inc., 29 S.W.3d 74, 77 (Tex. 2000).  We consider only evidence supporting
United=s counterclaims
and disregard all contrary evidence.  City of Keller v. Wilson, 168
S.W.3d 802, 823-26 (Tex. 2005).  We must decide if there is any evidence of
probative value that raises issues of fact on the material questions
presented.  Bostrom Seating, Inc. v. Crane Carrier Co., 140 S.W.3d 681,
684 (Tex. 2004).  Where no evidence of probative force on an ultimate fact
element exists or where the probative force of the testimony is so weak that
only a mere surmise or suspicion is raised as to the existence of essential
facts, an instructed verdict is appropriate.  ITT Consumer Fin. Corp. v.
Tovar, 932 S.W.2d 147, 160 (Tex. App.CEl
Paso 1996, writ denied).  As the reviewing court, we may affirm the directed
verdicts even if the trial court=s
rationale for granting the verdicts was erroneous, provided those verdicts can
be supported on another basis.  Robbins v. Payne, 55 S.W.3d 740, 746
(Tex. App.CAmarillo
2001, pet. denied).








United
contends that there was more than a scintilla of evidence to support its
counterclaims of breach of contract, fraud, and conversion.  United states that
Grosse=s admissions,
documentary proof that the building was not properly maintained for air
conditioning and heating, and First Service=s
servicing of the building without the building engineer=s or the manager=s
signing of the service report constituted evidence of the breach by First
Service.  United states that the evidence to support its fraud counterclaim was
First Service=s
promise to use the Faser software but failure to use it.  As to United=s counterclaim for
conversion, United refers the court to its evidence that First Service Ahijacked the password
necessary to control and maintain a comfortable temperature at the building.@  United has failed to
provide citations to the record and authorities to support its arguments.  Rule
38.1(h).

Despite
United=s omissions in
its argument under this issue, we reviewed Grosse=s
testimony, the documentary proof relating to maintenance, and the testimony of
the building engineer, Wayne Martin, and the building manager, Hastings. 
Earlier in its brief, United did cite record references to Grosse=s testimony, claiming that
those references amounted to admissions of breach of contract and fraud.  We do
not agree with United=s
reading of the record.  Grosse=s
Aadmissions@ must be viewed in the
context of his other testimony.  Grosse admitted that they did not do all the
maintenance that the contract required, but he immediately stated that First
Service did not do so because it was not being paid on time.  Grosse also
pointed out that lack of preventive maintenance meant that First Service would
suffer when the equipment failed and that it was in First Service=s interest to perform the
maintenance.  Twice, Grosse expressly denied that First Service had breached
the contract.  Grosse did acknowledge that First Service did not always get the
service reports signed by United, but those failures appear at most to be an
immaterial breach.  Martin and Hastings testified that complaints concerning
First Service occurred after United=s
material breaches of late payments.[2]  In a letter
to Grosse, Bosch stated that he understood First Service=s refusal to perform services when United was
slow in paying.








Although
it appears that United=s
evidence to show a breach of contract was legally insufficient or that United
had waived any breaches,[3] there is
another reason why the trial court was correct in granting a directed verdict
to First Service on United=s
counterclaim of breach of contract.  United provided no evidence on the element
of damages.  The element of damages is an essential element of a
breach-of-contract action.  See Southwell v. Univ. of the Incarnate Word,
974 S.W.2d 351, 354-55 (Tex. App.CSan
Antonio 1998, writ denied).  The trial court properly granted First Service a
directed verdict on United=s
counterclaim for breach of contract.

The
elements of fraud are (1) a material misrepresentation (2) made with knowledge
and (3) with the intent it would be acted upon (4) and that is relied upon and
(5) results in injury.  Formosa Plastics Corp. v. Presidio Eng=rs & Contractors, Inc.,
960 S.W.2d 41, 47-48 (Tex. 1998).  United only states that there was evidence
of fraud because First Service promised to use the Faser software and did not
use it.  The trial court properly granted First Service a directed verdict on
United=s counterclaim
for fraud.

Conversion
occurs when one person makes an unauthorized and wrongful assumption and
exercise of dominion and control over the personal property of another, to the
exclusion of or inconsistent with the owner=s
rights.  Waisath v. Lack=s
Stores, Inc., 474 S.W.2d 444, 447 (Tex. 1971); Cone v. Fagadau Energy
Corp., 68 S.W.3d 147 (Tex. App.CEastland
2001, pet. denied).  United argues that conversion by First Service occurred
when First Service Ahijacked
the password necessary to control and maintain a comfortable temperature at the
building.@  United
apparently refers to the password that First Service provided to United at the
time the equipment was installed in 1999.  Grosse testified that First Service
gave United the initial password but that United could then change the
password.  Grosse also pointed out that the lighting system and facility
management system remained the personal property of First Service under Section
7-A of the contract because United had not paid for it.  Martin, United=s former building engineer,
testified that, aside from the software, he could and did manually adjust the
building temperature.  The trial court properly granted First Service a
directed verdict on United=s
counterclaim for conversion.  United=s
fourth issue is overruled.

Was the Evidence
Legally and Factually Sufficient to Support

the Jury=s Award of Attorneys= Fees?

 








In
its third issue, United contends that the evidence was legally and factually
insufficient to support the award of attorneys=
fees to First Service.  In analyzing United=s
no-evidence challenge, we must determine whether the evidence at trial could
enable reasonable and fair-minded people to reach the verdict on attorneys= fees.  Wilson, 168
S.W.3d at 827.  We must review the evidence in the light most favorable to the
verdict, crediting any favorable evidence if a reasonable fact-finder could and
disregarding any contrary evidence unless a reasonable fact-finder could not.  Id.
at 821-22, 827.  We may sustain a no-evidence or legal sufficiency
challenge only when (1) the record discloses a complete absence of a vital
fact, (2) the court is barred by rules of law or of evidence from giving weight
to the only evidence offered to prove a vital fact, (3) the only evidence
offered to prove a vital fact is no more than a mere scintilla, or (4) the
evidence conclusively establishes the opposite of a vital fact.  Id. at
810.

In
reviewing United=s
factual sufficiency challenge, we must consider and weigh all of the evidence
and determine whether the evidence in support of the jury=s finding is so weak as to
be clearly wrong and manifestly unjust or whether the finding is so against the
great weight and preponderance of the evidence as to be clearly wrong and
manifestly unjust.  Dow Chem. Co. v. Francis, 46 S.W.3d 237, 242 (Tex.
2001); Pool v. Ford Motor Co., 715 S.W.2d 629 (Tex. 1986); In re King=s Estate, 244 S.W.2d
660 (Tex. 1951).  When conducting a factual sufficiency review, we cannot
substitute our judgment for that of the jury.  Pool, 715 S.W.2d at 635. 
The jury is the sole judge of the credibility of the witnesses and the weight
to be given to their testimony.  Jones v. Tarrant Util. Co., 638 S.W.2d
862, 866 (Tex. 1982).

United
claims that First Service=s
expert, Kidwell, was not qualified as an expert and that his testimony lacked
an adequate basis and was, therefore, conclusory.  We disagree.  We first note
that United did not challenge the qualifications of Kidwell and obtain a ruling
before trial or when he testified.  See Mar. Overseas Corp. v. Ellis,
971 S.W.2d 402, 409 (Tex. 1998).  Kidwell demonstrated that he was qualified as
an expert, and his testimony demonstrated that he was familiar with normal
rates and fees for this type of litigation in the area.  Kidwell testified that
he has practiced law for fifteen years, that he currently was with a major
Midland law firm, that his practice was Aprimarily
a commercial litigation practice handling lawsuits such as this [one],@ that he had reviewed the
billing records of First Service=s
attorneys, that he was familiar with the normal rates and fees for this type of
litigation in the area, and that he had concluded that the fees charged by First
Service=s attorneys
were reasonable and necessary in the prosecution of the case.








Kidwell
demonstrated that he was an expert qualified by knowledge, skill, experience,
training, and education to provide specialized testimony to assist the jury in
understanding the  evidence on the attorneys=
fees.  See Tex. R. Evid. 702. 
Kidwell=s direct and
cross-examination testimony demonstrated that he had reviewed the time and
labor required, the novelty and difficulty of the questions involved, and the
skill required in representing First Service.  He testified concerning the
experience, reputation, and ability of the attorneys representing First Service
and noted that their hourly fees were quite reasonable.  See Arthur Andersen
& Co. v. Perry Equip. Corp., 945 S.W.2d 812, 818 (Tex. 1997).  United
did not present an expert witness who might have challenged Kidwell=s conclusions.  United=s third issue is overruled.

Was
the Evidence Sufficient to Support the Damages Awarded?

In
one short paragraph, United states that the jury award of damages was
excessive, that First Service did not justify the payments that United had
made, and that there should have been a reduction in the damages awarded. 
Again, United has failed to provide this court with a clear and concise
argument for each of the contentions made, and it has failed to supply
appropriate citations to authorities and to the record.  Rule 38.1(h). 
Further, United failed to preserve this complaint.  Tex. R. Civ. P. 324(b); Fredonia State Bank v. Gen. Am.
Life Ins. Co., 881 S.W.2d 279, 281 (Tex. 1994).  United=s final issue is overruled.


This
Court=s Ruling

The
judgment of the trial court is affirmed.

 

 

TERRY McCALL

JUSTICE

December 20,
2007

Panel consists of: Wright, C.J., 

McCall, J., and Hill, J.[4]









[1]Counsel for First Service offered Ato run upstairs and obtain a certified copy@ if the court wished.  





[2]First Service=s
counsel asked Martin if he recalled Hastings saying that the reason Ait was tough to get First Service to come out . . .
was because Mr. Bosch was late in payments.@ 
Martin said that he did.





[3]See Hanks v. GAB Bus. Servs., Inc., 644 S.W.2d 707, 708 (Tex. 1982) (A[a] party who elects to treat a contract as continuing
deprives himself of any excuse for ceasing performance on his own part@).





[4]John G. Hill, Former Justice, Court of Appeals, 2nd
District of Texas at Fort Worth sitting by assignment.