**Opinion issued August 29, 2024**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-22-00630-CV

————————————

**HUONG VO, Appellant**

**V.**

**MORAD MEKHAIL D/B/A EZ TRUST, Appellee**

---

**On Appeal from the 164th District Court**
**Harris County, Texas**
**Trial Court Case No. 2015-46823**

---

## MEMORANDUM OPINION

Appellant Huong Vo won a lawsuit against third-party Thuy Nguyen[1] and instigated an execution sale of Nguyen's real property to collect the judgment. Before the execution sale could occur, Nguyen sold the property herself and

---

[1] Thuy Nguyen was a party in the underlying lawsuit, but she is not a party on appeal.

satisfied the majority of her judgment debt to Vo. Vo nevertheless allowed the execution sale on the same property to go forward and accepted funds from the sale far in excess of any amount she was still owed on the judgment debt. The excess proceeds from the execution sale were then distributed to Nguyen.

Appellee Morad Mekhail d/b/a EZ Trust purchased the property at the execution sale. The trial court subsequently declared that, because of the prior sale of the property by Nguyen, the execution sale was ineffective to transfer any interest in the property to Mekhail. Mekhail sought the return of the funds he had paid for the property. Nguyen returned the excess proceeds she received from the ineffective execution sale, but Vo refused. Mekhail proceeded to try causes of action including common-law and statutory fraud, conversion, and unjust enrichment against Vo. The trial court ruled in Mekhail's favor and ordered Vo to return the funds she received from the ineffective execution sale, awarding Mekhail $17,358.74 in actual damages. The trial court also awarded Mekhail exemplary damages of $20,000 and $2,500 in attorney's fees, plus pre- and post-judgment interest and costs.

In four issues on appeal, Vo argues that the evidence was legally and factually insufficient to support the trial court's findings on (1) conversion, (2) common-law fraud, (3) fraud in a real estate transaction, and (4) unjust enrichment. Vo also argues that the award of exemplary damages was improper.

We conclude that the trial court's determination that Vo committed fraud was supported by legally and factually sufficient evidence, and we therefore affirm.

## Background

In November 2013, Vo obtained a judgment against Thuy Nguyen. The November 2013 judgment awarded Vo $9,600 in actual damages plus post-judgment interest and costs and $6,000 in attorney's fees. In partial satisfaction of this judgment, Nguyen paid $4,000 to Vo's attorneys and executed a release of claims for the remaining attorney's fees that she was ordered to pay in the November 2013 judgment. The release, dated July 28, 2014, states that the law firm that had represented Vo in the November 2013 suit accepted from Nguyen payment of $4,000 and released any further claims for attorney's fees from Nguyen.

Vo subsequently requested a writ of execution and order of sale of real property to satisfy the November 2013 judgment. She identified Nguyen's townhouse, located at 12625 Memorial Dr., #94 (the Property), as the property to be sold at the execution sale. The writ of execution issued on December 8, 2014.

On December 31, 2014, before the execution sale could be conducted, Nguyen herself sold the Property to Michael M. Meraji via a General Warranty Deed. Nguyen then paid the principal amount owed on the November 2013 judgment. The record shows that, on January 26, 2015, Nguyen sent to the Harris

County Constable's office a cashier's check in the amount of $10,032 to cover the $9,600 in actual damages and $432 in court costs assessed against her in the November 2013 judgment in favor of Vo. Nguyen also provided to the constable a copy of the release of attorney's fees that settled the $6,000 in attorney's fees due under the November 2013 judgment.

These funds were promptly provided to Vo. Following this payment, Nguyen owed $719.61 in post-judgment interest and another $32.38 in interest on the court costs. Despite Nguyen's sale of the Property, the execution sale proceeded. On March 18, 2015, Mekhail purchased the Property at the execution sale. Mekhail paid $52,000 to the Constable's office and received a Deed Under Writ of Execution purporting to convey Nguyen's interest in the Property to him.

Following the execution sale, the Constable's office provided two checks to Vo pursuant to the paperwork filed with writ of execution, purportedly to satisfy the November 2013 judgment. Vo received one check for $9,042.68 in satisfaction of the actual damages for the 2013 judgment. She received a second check for $8,316.06 for attorney's fees related to that judgment. Both checks were made out to Huong Vo c/o The Law Office of Dal Fenton. Vo endorsed both of these checks and deposited them into her personal bank account. The excess proceeds remaining from Mekhail's payment following the execution sale were disbursed to Nguyen.

4

Meraji sued Mekhail, seeking to remove the cloud on his title to the Property with a declaration that the Deed Under Writ of Execution (Execution Deed) did not convey any interest in the Property to Mekhail. On May 3, 2016, the trial court granted an interlocutory summary judgment declaring "ineffective" the execution sale of the Property that had occurred on March 18, 2015. The order declared:

> [T]he Deed Under Writ of Execution executed on March 18, 2015, by the Hon. Phil Camus, Constable, Precinct 5, Harris County, Texas, and filed for record on March 26, 2015 . . . was ineffective to convey any interest to EZ Trust, for the reason that the judgment debtor under the writ of execution recited in such Deed Under Writ of Execution, did not own any right, title or interest, at the time of the sale, in the [Property].

This order thus removed the cloud on Meraji's title and ordered Mekhail to pay court costs.

Following the ruling that the Execution Deed was ineffective to convey any interest in the Property to him, Mekhail joined Nguyen and Vo to the lawsuit as third-party defendants. He asserted that, because Nguyen did not own any interest in the Property at the time the Execution Deed was executed, Nguyen was not entitled to keep any excess proceeds paid to her as consideration for Mekhail's purchase of the Property at the execution sale. He also argued that Vo could not keep the money from the ineffective execution sale, particularly because she wrongly sought and carried out the execution sale. He sought to recover from them the funds they received after the execution sale, asserting that this was necessary to

5

return the parties to the status quo that existed prior to the execution sale. Mekhail alleged causes of action for unjust enrichment, money had and received, conversion, common-law fraud, and fraud in a real estate transaction.

In his fraud allegations, Mekhail asserted that Vo essentially used the writ of execution to obtain a double recovery of attorney's fees and other amounts due under the 2013 judgment. He alleged that Vo made a material, false representation to the Constable that induced the sale of the Property, including by representing that Nguyen owned the Property to be executed upon and representing that she was entitled to the proceeds from the sale. He asserted that Vo's representations requesting the execution sale and indicating that Nguyen owned the Property "induced the sale of the Property to [him]." He further asserted that Nguyen "falsely represented . . . that she was entitled to the excess proceeds" when she did not own the Property on the date of the execution sale.

Mekhail further alleged that, on January 30, 2015, the Constable's office informed Stephanie Vo at the law firm of Dal Fenton that Nguyen had paid $10,032 on the judgment. According to Mekhail's pleadings, the constable asked Stephanie Vo whether she wished to call off the execution sale, and she said no. Mekhail argued that both Vo and Nguyen "concealed or failed to disclose facts known to them" that induced Mekhail to enter into the purchase of the Property at the execution sale.

6

Mekhail sought actual and punitive damages. He also sought recission of his purchase of the Property pursuant to Business and Commerce Code section 17.50(b)(3), plus attorney's fees and costs.

Following the filing of this petition, Nguyen returned the excess proceeds she received following the execution sale, and the trial court dismissed her from the lawsuit. The case thus proceeded to a bench trial against Vo on Mekhail's claims for common-law and statutory fraud, conversion, and unjust enrichment.

Mekhail testified to the events set out above. He testified that he had paid $52,000 for the Property and received the Execution Deed. Prior to the execution sale, he performed a quick title search that did not return any issues with the title to the Property. He further acknowledged that he did not have any contact with Vo prior to the execution sale. He testified that he had some prior experience purchasing properties at auction, but it was not his main source of income or employment. Due to the nature of the execution sales, in which properties were listed and then auctioned within a week, the time for investigating potential purchases was short and, thus, problems with title or other issues with the properties would sometimes arise after the sale occurred. He testified that he had previously attempted to purchase a property in a foreclosure sale, and when that sale had later been invalidated, the money he paid in purchase of the Property was returned to him.

Regarding the Property at issue here, after the execution sale and his payment through the Constable's office, he found out the Property had already been sold to Meraji. His further investigations revealed that the abstract of judgment was not recorded in the property records, and "this is the reason the title company didn't know anything about the judgment." Mekhail also testified that Nguyen "had filed a homestead affidavit prior to the Constable's Sale," but she had not "filed to the courthouse." Mekhail testified that the trial court "found that there was [an] irregularity in the sale, and the sale was void[ed] by the Court."

Mekhail testified that, according to public records, some of the money he paid was disbursed to Vo to satisfy the 2013 judgment against Nguyen. He testified, and produced copies of the records and cancelled checks, showing that $9,042.68 of the execution sale proceeds were paid to Vo for the actual damages awarded in the 2013 judgment, and a second disbursement of $8,316.06 was paid for the attorney's fees due under the 2013 judgment. Both of these checks were payable to "Vo Huong C/O The Law Office of Dal Fenton." The checks were endorsed by Vo and deposited into her personal accounts. Mekhail testified that he went to see Fenton in connection with this case after he was served in the suit filed by Meraji. He discovered that Vo's daughter, Stephanie, worked for Fenton. A letter from Fenton was entered into evidence. In the letter, Fenton stated that he does not represent Vo and "had no communication with her regarding this

8

lawsuit." Mekhail further stated that Nguyen had received the excess proceeds from his purchase of the Property, and he had settled with her.

Vo testified that she remembered the checks, and she recalled that both checks were endorsed by her and deposited to her account. It had been so long that she could not remember how she was able to deposit the checks without Dal Fenton's involvement. Vo testified that her daughter, Stephanie, who worked at Fenton's law office, handled "all the matter[s] related to the collection of the judgment and the sale of the Constable." Vo further testified that she was aware Nguyen had already paid what was owed on the judgment debt. When asked why she had not paid back the money she received from Harris County for the execution sale, she testified that she did not know the execution sale had been voided, and she did not pay Mekhail "[b]ecause [she] did not know that man." Regarding the check Vo received from the execution sale for attorney's fees owed under the 2013 judgment, counsel asked her why she deposited that check in her own personal account if it was for attorney's fees. She answered, "I did not know that was the lawyer's because it was under my name."

After the parties' closing arguments, the trial court stated on the record:

In reference to the Defendant, Ms. Vo, there's no question in the Court's mind but that she . . . did not come in here with clean hands. She states that she did not know the sale was void. If she did not know, she should have known that it was voided. She also states and it was shown that the attorney's fees in which she received went directly into her account.

9

She also has stated and shown that the attorney which supposedly is cited actually seemingly did not do the work. This Court cannot honor this type of behavior nor can this Court honor a voided sale where the person is, yes, unjustly enriched.

So for purposes of this proceeding, I am ruling for the third party Plaintiff, [Mekhail].

After the conclusion of the trial, Vo filed "Objections to the Proposed Final Judgment," stating objections to the proposed final judgment submitted by Mekhail on June 30, 2022. The proposed judgment was not included as an exhibit to Vo's motion and nothing in the record appears to be a proposed judgment submitted on June 30, 2022. Vo complains about various lines purportedly from the June 30, 2022 proposed judgment on the basis that the evidence was legally or factually insufficient to support the conclusions, and it contained a general complaint that "[t]he Proposed Final Judgment fails to state specific findings that support the elements of each of [Mekhail's] claims."

Vo subsequently, on July 14, 2022, filed a written request for findings of fact and conclusions of law. The trial court did not sign findings and conclusions as a separate document. Instead, Mekhail filed a "Final Judgment" on July 15, 2022, that included a recitation of certain facts and that included legal conclusions. The trial court signed the final judgment on August 15, 2022. This document was titled "Final Judgment," and it included a handwritten notation below adding "and Findings of Fact and Conclusions of Law."

10

The facts outlined in the final judgment include findings that Vo obtained a judgment against Nguyen on November 4, 2013, and requested a writ of execution and order of sale for the Property on October 6, 2014. The trial court found that Nguyen sold the Property to Meraji on December 31, 2014, and that "Thuy Nguyen paid the judgment and attorney's fees related to the November 4, 2013, judgment obtained against her by Huong Vo." It made findings regarding Mekhail's purchase of the Property, the funds disbursed to Vo and Nguyen, and the involvement of Vo's daughter. Specifically, the judgment recited: "The entire process, from request for writ of execution and order of sale, to execution sale, to receipt of funds from the sale, was handled by Sthephany Vo [sic], daughter of Huong Vo, without the knowledge of Sthephany Vo's employer Dal Fenton." Finally, the judgment contained a recitation of the procedural history of this lawsuit, beginning with Meraji's filing of his original petition, the trial court's "interlocutory summary judgment Order declaring void the Property's execution sale of March 18, 2024," and Mekhail's subsequent claims against Vo and Nguyen. The trial court found: (1) "Huong Vo knew or should have known that the execution sale was void"; (2) "Huong Vo knew or should have known she was obligated to return the funds to [Mekhail] to return the parties to the status quo prior to the execution sale"; and (3) "Huong Vo has failed to return the funds to [Mekhail] without justification." Finally, the judgment recited that the trial court

made "findings in favor of [Mekhail] against [Vo] for Unjust Enrichment, Common[] Law Fraud, Fraud in the Real Estate Transaction, and Conversion."

The trial court awarded actual damages of $17,358.74, punitive damages of $20,000, pre- and post-judgment interest, court costs, and $2,500 in attorney's fees. Vo did not file any objections to the form or content of the findings of fact and conclusions of law contained in the trial court's August 15, 2022 judgment.

## Sufficiency of the Evidence

In four appellate issues, Vo complains that the evidence was legally and factually insufficient to support the trial court's findings on conversion, common-law fraud, fraud in a real estate transaction, and unjust enrichment. Because our conclusions on the fraud claim are sufficient to support the trial court's judgment, we address only the arguments regarding the fraud claim on appeal. *See* TEX. R. APP. P. 47.1 ("The court of appeals must hand down a written opinion that is as brief as practicable but that addresses every issue raised and necessary to final disposition of the appeal.").

### A. Standard of Review

In a legal-sufficiency review, we must consider all the evidence "in the light most favorable to the party in whose favor the verdict has been rendered," and "every reasonable inference deducible from the evidence is to be indulged in that party's favor[.]" *Bustamante v. Ponte*, 529 S.W.3d 447, 456 (Tex. 2017) (quoting

12

*Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997)). We may sustain a legal-sufficiency challenge—that is, a no-evidence challenge—only when (1) the record bears no evidence of a vital fact, (2) the rules of law or of evidence bar the court from giving weight to the only evidence offered to prove a vital fact, (3) the evidence offered to prove a vital fact is no more than a mere scintilla, or (4) the evidence establishes conclusively the opposite of a vital fact. *Gunn v. McCoy*, 554 S.W.3d 645, 658 (Tex. 2018).

In a factual-sufficiency review, we set aside a finding only if, after considering and weighing all the pertinent record evidence, we determine that the credible evidence supporting the finding is so weak, or so contrary to the overwhelming weight of all the evidence, that the finding should be set aside and a new trial ordered. *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex. 1986) (op. on reh'g); *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986) (when party complaining of factual insufficiency did not have burden of proof at trial, we conduct our review by considering all record evidence both for and against finding). When conducting a factual-sufficiency review, a court of appeals must not merely substitute its judgment for that of the factfinder. *Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 761 (Tex. 2003). The factfinder is the sole judge of the witnesses' credibility and the weight to be given to their testimony. *Id.*

Regarding the trial court's findings, Vo argues in her brief that the findings of fact and conclusions of law "that were filed as part of the Final Judgment are insufficient to support each and every element necessary to support the District Court's Final Judgment," citing Rule 299. Rule of Civil Procedure 299 provides:

> When findings of fact are sent by the trial court they must form the basis of the judgment upon all grounds of recovery and of defense embraced therein. The judgment may not be supported upon appeal by a presumed finding upon any ground of recovery or defense, no element of which has been included in the findings of fact; but when one or more elements thereof have been found by the trial court, omitted unrequested elements, when supported by evidence, will be supplied by presumption in support of the judgment. Refusal of the court to make a finding requested is reviewable on appeal.

TEX. R. CIV. P. 299. Because the trial court here made some findings, including findings on damages, we may presume the trial court made implied findings as to the remaining elements. *See id.*; *see also Clinton v. Gallup*, 621 S.W.3d 848, 850 (Tex. App.—Houston [14th Dist.] 2021, no pet.) ("So long as the trial court makes a finding as to at least one element of a cause of action, [we] may presume that the trial court made implied findings as to the remaining elements.").

Although Vo complains now on appeal that the trial court failed to make all of the necessary findings, she did not make the trial court aware of any purported omission by requesting additional findings. *See Vickery v. Comm'n for Lawyer Discipline*, 5 S.W.3d 241, 254 (Tex. App.—Houston [14th Dist.] 1999, pet. denied) ("In a bench trial, the appellant may request additional findings on omitted

elements to prevent them from being deemed on appeal."); *see also* TEX. R. CIV. P. 298 (providing that "any party may file with the clerk of the court a request for specified additional or amended findings or conclusions"). Vo points to her "Objections to the Proposed Final Judgment" complaining about the proposed final judgment purportedly submitted by Mekhail on June 30, 2022. However, the final judgment signed by the trial court was filed on July 15, 2022, and signed on August 15, 2022, which occurred after both the purported filing of the proposed judgment and after the filing of Vo's written objections. Nothing in the record indicates that Vo requested specific additional or amended findings or conclusions pursuant to Rule 298, or that her complaints in the "Objections to the Proposed Final Judgment" could have served to put the trial court on notice of her complaint that the findings included in the final judgment were incomplete.

Therefore, we presume the trial court's omission is inadvertent, and we are authorized by Rule 299 to presume the trial court impliedly made any findings, supported by the record, that are necessary to support its judgment. *See Clinton*, 621 S.W.3d at 850; *Vickery*, 5 S.W.3d at 258; *see also* TEX. R. CIV. P. 299.

## B.    Fraud Claim

In its final judgment, the trial court found that Vo committed common-law and statutory fraud in a real-estate transaction.

To support the trial court's fraud finding, it required evidence that: (1) Vo made a material representation; (2) the representation was false; (3) Vo knew the representation was false or made it recklessly without any knowledge of its truth; (4) Vo intended that Mekhail would act on the representation; and (5) Mekhail justifiably relied on the representation, which caused him injury. *See Int'l Bus. Machs. Corp. v. Lufkin Indus., LLC*, 573 S.W.3d 224, 228 (Tex. 2019) (setting out elements of common-law fraud); *see also* TEX. BUS. & COM. CODE § 27.01(a)–(b) (statutory fraud in real estate transaction); *Miller v. Argumaniz*, 479 S.W.3d 306, 314 (Tex. App.—El Paso 2015, pet. denied) ("The elements of statutory fraud under §27.01(a) are essentially the same as the elements of common law fraud, except that §27.01(a) does not require proof of knowledge or recklessness as a prerequisite to the recovery of actual damages.").

Here, the trial court specifically found that Mekhail purchased the Property at an execution sale, and Vo received funds from that sale. It further found that "[t]he entire process, from request for writ of execution and order of sale, to execution sale, to receipt of funds from the sale, was handled by Stephany Vo, daughter of Huong Vo[.]" The trial court also found that "Huong Vo knew or should have known that the execution sale was void" and that Vo had engaged in fraud and statutory fraud, among other torts. It found that Mekhail was entitled to actual and exemplary damages.

In support of the trial court's findings that Vo committed fraud, Mekhail presented evidence that Vo orchestrated the execution sale through her daughter using letter head from the law firm where her daughter worked, despite the fact that her daughter's employer was not actually involved in representing Vo and did not know about or help with Vo's efforts to collect on the 2013 judgment. Mekhail presented evidence that Vo had not recorded an abstract of judgment in order to obtain a judgment lien on the Property, which Nguyen had designated as her homestead, and that Nguyen did not own the Property at the time of the execution sale.

Mekhail further presented evidence regarding Nguyen's efforts to pay the 2013 judgment debt. Vo herself acknowledged that Nguyen had paid the 2013 judgment. Nguyen paid Vo's attorneys $4,000 and negotiated with them a release of the remaining attorney's fees owed pursuant to the 2013 judgment. Nguyen satisfied this portion of the debt prior to Vo's application for the writ of execution. The evidence further demonstrated that prior to the date of the execution sale, Nguyen sold the Property herself. She then paid Vo $10,032 to satisfy the principal amount of the 2013 judgment—$9,600—and $432 in court costs.

Thus, Mekhail presented evidence that, at the time of the execution sale, less than $800 of post-judgment interest remained to be paid to fully satisfy the 2013 judgment. Vo nevertheless carried forward with the sale. She accepted, endorsed,

17

and deposited two checks totaling more than $17,000 in proceeds from the execution sale, including the check for $8,316.06 in attorney's fees.

We conclude that this evidence is sufficient to support the trial court's determination that Vo committed fraud. In receiving the funds from the sale, endorsing the checks, and depositing them into her account, Vo represented that she was entitled to receive benefits from the execution sale. This was a material representation. *See Smith v. KNC Optical, Inc.*, 296 S.W.3d 807, 812 (Tex. App.—Dallas 2009, no pet.) (holding that material representation is one that "a reasonable person would attach importance to and would be induced to act on the information in determining his choice of actions in the transaction in question"). And the fact that she received and retained funds far in excess of the amount still due and owing on the 2013 judgment—funds obtained from the execution sale happening after Nguyen had already sold the Property and had already satisfied the majority of the judgment debt—constituted evidence that Vo's representation that she was entitled to those funds was false.

This same evidence supports a conclusion that Vo intended the other parties involved in the transaction, including the buyer of the Property at the execution sale, to rely on her representation that she was entitled to the funds from the execution sale. Intent is a fact question "uniquely within the realm of the trier of fact because it so depends upon the credibility of the witnesses and the weight to

18

be given to their testimony." *Spoljaric v. Percival Tours, Inc.*, 708 S.W.2d 432, 434 (Tex. 1986). "[A] party's intent is determined at the time the party made the representation, [but] it may be inferred from the party's subsequent acts after the representation is made." *Id.* at 434. Some factors a court considers when determining intent are motive, past conduct, and related wrongful acts. *Feagins v. Tyler Lincoln–Mercury, Inc.*, 277 S.W.3d 450, 458 (Tex. App.—Texarkana 2009, no pet.).

In accepting and retaining the funds from the execution sale, Vo demonstrated that she intended the other parties to rely on her representation that she was entitled to those funds. It was further justifiable that Mekhail relied on those representations. He paid for the Property in the execution sale in reliance on the representations that Vo was entitled to receive funds to satisfy the 2013 judgment debt. *JPMorgan Chase Bank, N.A. v. Orca Assets G.P., L.L.C.*, 546 S.W.3d 648, 653 (Tex. 2018) (holding that, to establish this element of fraud cause of action, "the plaintiff must show that it actually relied on the defendant's representation and, also, that such reliance was justifiable").

Additionally, Mekhail presented evidence that Vo used her daughter's position at a law firm to seek payment of funds through the execution sale far beyond the amount to which she was entitled without the knowledge of the attorney for whom she worked. Vo further retained the funds from the execution

sale, including depositing into her own personal account the check designated to pay attorney's fees. These related wrongful acts are evidence relevant to Vo's intent to defraud. *See Feagins*, 277 S.W.3d at 458 (holding that courts may consider factors such motive, past conduct, and related wrongful acts in determining intent to defraud).

Finally, there was evidence that Vo's representations that she was entitled to collect money through the execution sale caused Mekhail damages. When the trial court determined that the Execution Deed was ineffective to transfer any interest in the Property to Mekhail, Mekhail was entitled to the return of the funds he paid for the Property. *See, e.g.*, *Collum v. DeLoughter*, 535 S.W.2d 390, 392–93 (Tex. App.—Texarkana 1976, writ ref'd n.r.e.) (affirming judgment setting aside execution sale due to irregularities with sale and awarding purchaser at sale amount he paid for property together with attorney's fees and all costs); *KSF, Ltd. v. Voager Ventures, Inc.*, No. 05-95-00757-CV, 1996 WL 403985, at *3 (Tex. App.—Dallas 1996, no writ) (mem. op., not designated for publication) (affirming judgment returning amount paid to attempted purchaser of property at execution sale, where execution sale was determined to be invalid and "passed no title to . . . the purchaser"). However, Vo's misrepresentation that she was entitled to the funds from the execution sale and her continued retention of the funds has prevented Mekhail from obtaining the return of his purchase money.

Vo makes various arguments attempting to undermine the trial court's judgment in Mekhail's favor on his fraud claim, but none of her appellate arguments are availing. Vo argues that she did not make any representations to Mekhail prior to the execution sale, so he could not have relied on anything she said in attempting to purchase the Property. While the parties agreed that Vo and Mekhail did not know one another prior to Mekhail's purchase of the Property, Mekhail was nevertheless the type of person she intended to act upon her representations that she was entitled to funds from the execution sale—i.e., potential buyers of the Property. Vo's representations that she was entitled to the funds did in fact reach Mekhail, who then purchased the Property at the execution sale and paid funds that were eventually disbursed to Vo based on her misrepresentations. *See Ernst & Young, LLP v. Pac. Mut. Life Ins. Co.*, 51 S.W.3d 573, 578 (Tex. 2001) (holding that defendant commits fraud indirectly when it makes false representation to third party with intent or expectation that it be repeated to deceive plaintiff); *see also Zaragoza v. Jessen*, 511 S.W.3d 816, 823–24 (Tex. App.—El Paso 2016, no pet.) (acknowledging that intent to defraud is not usually susceptible to direct proof and concluding that fact-finder is permitted to draw reasonable inferences from direct and circumstantial evidence (citing *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 305 (Tex. 2006)).

Vo also argues that she did not make any false representations in connection with the writ of execution because "at the time of the filing, Thuy Nguyen owned the Property that became the subject of the Constable's sale." Vo also argues that there is no evidence that any representation she made was false at the time she made it. This argument disregards the evidence that Vo used her daughter Stephanie's position at the Law Offices of Dal Fenton to apply for the writ of execution and accept the sale proceeds, despite Fenton's lack of knowledge or involvement in her attempts to collect on the 2013 judgment. It also disregards Vo's misrepresentation that she was entitled to the funds from the execution sale at the time she accepted, endorsed, and deposited the checks she received. The evidence also demonstrated that Vo kept funds far in excess of anything she was still owed under the 2013 judgment, including the check that was designated to pay attorney's fees.

The trial court, as the finder of fact, was entitled to disbelieve Vo's testimony that she did not know that Nguyen had already sold the Property and could not remember the circumstances under which she endorsed and deposited the checks disbursed to her after the execution sale. *See Golden Eagle Archery*, 116 S.W.3d at 761 (holding that factfinder is sole judge of witnesses' credibility and weight to be given to their testimony). It could instead have relied on Mekhail's evidence that Vo accepted, endorsed, and retained the checks, including a check

that was designated as payment of attorney's fees, in determining that Vo committed fraud. *See id.* at 774–75 (holding that factfinder may believe or disregard all or any part of testimony of any witness). Therefore, there is sufficient evidence to support a conclusion that Vo accepted, endorsed, deposited, and retained funds that she knew—either with actual knowledge or with recklessness in making the representation—she was not entitled to retain.

Vo argues that the writ of execution cannot support the trial court's fraud finding. She argues that the "Writ of Execution does not constitute a representation as it does not identify who owns the Property" and that "writs of execution are sent to the Constable's office and not potential buyers such as [Mekhail]." As we set out above, however, Vo made other representations, including accepting, endorsing, depositing, and retaining the funds from the execution sale. Thus, even if we agreed with Vo that she made no misrepresentations applying for the writ of execution, her other representations support the trial court's judgment here.

Vo further argues that Mekhail's reliance on any of her representations was not justifiable because he "was put on notice by the very nature of the Constable's auction that what the Constable's Deed granted was without warranty of title." We agree, as a general proposition, with Vo's statement that a "party claiming fraud has a duty to use reasonable diligence in protecting its own affairs." *Thigpen v. Locke*, 363 S.W.2d 247, 251 (Tex. 1962); *see also Orca Assets*, 546 S.W.3d at 654.

23

But we are not persuaded by Vo's argument that the nature of the Execution Deed itself put Mekhail on notice of unreliability of Vo's representations in connection with the execution sale.

To establish justifiable reliance, a plaintiff must show that he actually relied on the defendant's false representations and that his reliance was justifiable. *Orca Assets*, 546 S.W.3d at 653. Whether a plaintiff's reliance on false representations was justifiable is typically a question of fact. *See id.* at 654. In making this determination, we view the entirety of the circumstances "while accounting for the parties' relative levels of sophistication." *Id.* at 656.

Here, the fact that Mekhail purchased the Property by Execution Deed would not, in and of itself, have put Mekhail on notice that Vo was fraudulently attempting to obtain money in excess of what she was owed under the 2013 judgment by executing on Property that Nguyen had already sold. Mekhail testified that he had some experience purchasing property at execution or foreclosure sales, but it was not his main business. He had previous experience with purchasing property at a foreclosure sale that was later invalidated, resulting in the return of his purchase money. He testified that, prior to the execution sale here, he conducted a quick title search but did not find anything unusual at that time. This indicates that the type of deed used to convey the Property could serve to put Mekhail on notice that his interest in the Property might be impacted by defects in

24

title that were not clear at the time of the sale. It would not, as Vo argues, put him on notice that a judgment debtor would wrongfully collect and retain funds to which she was not entitled. *See id.*

Finally, Vo argues that Mekhail "can demonstrate no injury in fact" because he "received exactly what he paid for in purchasing a quitclaim deed," i.e. "a chance at title." This mischaracterizes the nature of the execution sale, and it ignores the fact that Vo accepted and then retained more than $17,000 in proceeds from the execution sale for a judgment that had been, in significant part, already satisfied. Thus, these funds retained by Vo could not be returned to Mekhail when the trial court determined that the execution sale was ineffective to transfer any interest in the Property to Mekhail.[2]

## C.    Punitive Damages

Finally, Vo argues that the award of punitive damages was "unsupported" by "any finding of clear and convincing evidence of fraud." We disagree.

The Civil Practice and Remedies Code section 41.003 provides that exemplary damages "may be awarded only if the claimant proves by clear and convincing evidence that the harm with respect to which the claimant seeks

---

[2]     Vo also argues that there is no evidence or legal basis to support a finding of fraud by omission. In her brief, she asserts that she addresses this issue "in an abundance of caution." We note that the trial court did not make any fraud-by-omission findings, nor do we rely on any such implied findings in determining that the evidence was sufficient to support the trial court's judgment.

recovery of exemplary damages results from . . . fraud." TEX. CIV. PRAC. & REM. CODE § 41.003(a). A request for exemplary damages is not a claim unto itself; it is an item of damages recoverable when liability is established for an underlying claim (assuming other requirements are met). *See Robbins v. Payne*, 55 S.W.3d 740, 747 (Tex. App.—Amarillo 2001, pet. denied) ("[T]here is no independent cause of action for exemplary damages. They are simply an element of damages recoverable under a cause of action.").

The appellate standards for legal-sufficiency review here are heightened because fraud sufficient to support an award of exemplary damages must be proven by clear and convincing evidence. *Sw. Bell Tel. Co. v. Garza*, 164 S.W.3d 607, 627 (Tex. 2004); *see* TEX. CIV. PRAC. & REM. CODE § 41.003(a). Under those standards, we must "look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." *Sw. Bell Tel.*, 164 S.W.3d at 627 (quoting *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002)). Considering the evidence of fraud set out above under this standard, we conclude that a reasonable factfinder could have formed a firm belief or conviction that Vo committed fraud in connection with accepting and retaining proceeds from the execution sale. Accordingly, we conclude that the evidence was sufficient to support the trial

court's award of exemplary damages. *See* TEX. CIV. PRAC. & REM. CODE § 41.003(a).

We overrule Vo's challenge to the sufficiency of the evidence supporting the trial court's judgment in Mekhail's favor on his fraud claims.

## Conclusion

We affirm the trial court's judgment.


Richard Hightower
Justice

Panel consists of Justices Kelly, Hightower, and Guerra.